STATE v. SIMON DILDY.

The confessions of a prisoner, to be competent evidence on a trial of murder, must be voluntary:

*Therefore*, where the facts showed that the prisoner was pursued by three armed men, and being arrested, replied to the questions accusing him of the alleged Homicide: *It was held*, that his confession under such circumstances, could not be received as evidence against him.

INDICTMENT for murder, tried before *Seymour, J.*, at Fall Term, 1874, WILSON Superior Court.

The defendant, one Simon Dildy, was charged with the murder of Charles Goy. On the trial, Henry Johnston, a wit-ness for the State, testified : That he was one of a party that went out to arrest the prisoner on the day of the homicide. That he and two others came up with the prisoner about twelve miles from the town of Wilson ; that when these three, (wit-ness and two others,) came up to the prisoner, they had arms in their hands, but did not present them at the prisoner. They did not inform the prisoner that they had come to arrest him. The prisoner did not appear to be at all frightened. Under these circumsttances witness asked prisoner what he was doing there. Prisoner replied that he was "just walking about." Witness then asked prisoner, "What made you kill Charles Goy ?" Counsel for the prisoner insisted that his answer to this question should not be given by the witness, for the reason that it appeared to the Court from the circumstances detailed, that such answer was extorted or drawn out by undue influence, compulsion and terror brought to bear upon the prisoner by the witness and his companions.

The Court overruled the objection and the witness then tes-tified that the witness inquired, " Is he dead ?" To this wit-ness replied, " You ought to know he's dead, when you killed him."

As witness was about to testify what the prisoner next said, counsel for the prisoner again asked the Court to exclude any thing further, to which the witness might testify, as coming from the prisoner, for the reason that improper influence, com-pulsion and terror was brought to bear upon the prisoner by the witness and his companions.

The Court overruled the objection, and the prisoner ex-cepted.

Witness then stated that the prisoner then and there con-fessed that he shot the deceased, saying that he thought to shoot him in the legs, but did not intend to kill him.

The counsel for the prisoner then moved to rule out this alleged confession and exclude it from the consideration of the

jury, on account of the improper influence, compulsion and terror above mentioned.

His Honor overruled the motion, and the prisoner again excepted.

There were other exceptions taken by the prisoner during the progress of the trial, but as they are not noticed in this Court, it is unnecessary to state them.

*H. F. Murray*, for the prisoner.
*Attorney General Hargrove*, for the State.

READE, J. We should never ruthlessly invade the sanctuary of the prisoner's own breast for evidence to convict him. We should enter only, and even then with hesitation, when he voluntarily opens the door and invites us in. Here there is not a voluntary feature in the whole transaction connected with the prisoner's confession.

(1.) He was trying to escape and was twelve miles away when he was overtaken by three armed men who were in pursuit; and when asked by them " what are you doing here ?" he tried to evade by answering, " Just walking about."

(2.) He was then asked, " What made you kill Charles Goy?" Again he tried to evade by asking of them, " Is he dead ?"

(3.) Instead of answering this question and awaiting his reply, they flout him and say, " You ought to know whether he is dead, you killed him."

Finding that he could not evade, and that there was no escape from answering, and unwilling to confess guilt, he at length answered, " I thought to shoot him in the legs; I did not intend to kill him." Now the question is not whether they used any words of threat or promise, but whether the confession was voluntary? That is the question. Here were three men in pursuit with arms in their hands, which would take no evasion or denial; and yet there was not an answer of the prisoner which was not dragged out of him; and yet they say it was voluntary; because they say, " The prisoner did not

appear to be at all frightened." We are so constituted that a trifle may shake the nerves and flush the face; but when a great danger threatens harm, all our powers gather for the conflict, and we may appear composed. A timid lady may scream at a butterfly, and look a lion in the face if need be. But still, whether the prisoner appeared to be frightened or not, is not the question; but whether his confessions were voluntary. And it is very clear that they were not.

The error in admitting the confessions entitles the prisoner to a new trial, and therefore it is not necessary that we should decide several other points presented by the record. We think however that it is not improper to remark that we have doubts whether the case, as presented to us now, is more than manslaughter.

There is error. *Venire de novo.* Let it be certified with this opinion.

PER CURIAM.                                    *Venire de novo.*