## STATE v. ANDERSON DRAKE.

### *Evidence—Confessions—Burglary.*

1. Where confessions are made by a prisoner under the influence of hope or fear, those subsequently made are presumed to proceed from the same influence; and until this presumption is rebutted by clear proof, the latter confessions, though induced by no immediate threat or promise, are inadmissible—approving *State* v. *Roberts*, 1 Dev., 259.

2. On trial for burglary it appeared that the prisoner was pursued by armed men, fired at several times and arrested; and in reply to a question then asked, the prisoner confessed the commission of the alleged offence. On the following day, the prosecutor and others had an interview with him while he was fettered and in prison, when the prisoner told how he broke into the dwelling house and stole the goods, &c., no threat or promise being made; *Held*, that the confessions are not admissible. But in such case, what was said by the prisoner as to his disposition of the stolen property, is admissible.

(*State* v. *Dildy*, 72 N. C., 325; *Whitfield*, 70 N. C., 356.; *Roberts*, 1 Dev., 259; *Lindsey*, 78 N. C , 499, cited and approved.)

INDICTMENT for Burglary tried at Fall Term, 1879, of McDOWÈLL Superior Court, before *Schenck, J.*

The prisoner was serving out a term of imprisonment at hard labor imposed upon his previous conviction for a criminal offence, and had been sent with other convicts to work on the Western North Carolina railroad. He escaped from the stockade in which the convicts were kept at night, and committed the alleged burglary. Judgment was pronounced upon a verdict of guilty and the prisoner appealed.

*Attorney General,* for the State.
*Messrs. D. G. Fowle* and *W. W. Wilson,* for prisoner.

ASHE, J. There were several exceptions taken to the ruling of His Honor in the course of the trial, only one of which is necessary to be considered in the view we take of the case. It was in evidence that the dwelling house of D. A. C. Salsbury, near Old Fort, had been broken open on the night of the fifteenth of June, 1879, and robbed. On the trial it was proposed by the state to prove the confessions of the prisoner, which was objected to by the prisoner's counsel. In order to determine the admissibility of the evidence the jury were required to retire while the court heard the evidence touching the character of the confessions. One Hallyburton was then introduced as a witness by the prisoner, who testified that on Monday after Friday when the alleged burglary occurred, he with others went to a negro house in Morganton to arrest the prisoner; that the prisoner in coming to the door was told, "You are our prisoner"; that the prisoner slammed a door and jumped out of a window and fled; that some ten or twelve shots were fired at him, but none of them took effect, and that he was overtaken and captured without further resistance; that when overtaken he was asked, "are you the negro that broke into Salsbury's house," and he answered, "Yes." He was then put in jail until noon, the

38

capture being early in the morning; and in the evening, Hallyburton put a hand cuff on him and fastened the cuff to a seat in the car, and carried him to the stockade. That no promises were made to the prisoner nor any inducements offered him to confess, and that no threats were made to him at any time, nor any conversation had with him on the way to the stockade. The prosecutor, Salsbury, then testified that on the next day he and one Crawford went to the stockade and asked to have an interview with the prisoner, when Mr. Troy, the superintendent of convicts at that point, sent for the prisoner and he came to the stockade fettered with his stockade shackles. Mr. Troy said, " Anderson, Mr. Salsbury wishes to interview you; sit down." The prisoner sat down and Mr. Salsbury asked, " What did you do with my overcoat." The prisoner's counsel here objected to the testimony, but the jury were ordered by His Honor to be recalled into the court house, and the objection of the prisoner being overruled, the witness Salisbury was then allowed to proceed with his testimony to the jury, which was to the effect that prisoner told him in reply to his interrogatory, that he had traded his overcoat to one Grier, and then related how he had prized open the window with an axe, and took the overcoat and vest, and had then gone up stairs and entered the back chamber and stolen the pants and then went down stairs, unlocked the back door and left.

We are of the opinion the confessions of the prisoner should not have been received. The confessions of a prisoner, to be competent evidence on a trial for murder, must be voluntary. *State* v. *Dildy*, 72 N. C., 325. ".Such is the abhorrence of the common law," said Chief Justice PEARSON in the case of *State* v. *Whitfield,* 70 N. C., 356, " in respect to extorting confessions, that it is a settled rule no confession of one charged with crime shall be admitted in evidence against him, when it appears that the confession was made by reason of hope or fear."

If then it can be inferred that either of these emotions operated on the prisoner to induce him to make the confessions testified to by the witness Salisbury, they were clearly inadmissible.   What are the facts?   The prisoner was pursued by armed men, how many does not appear, but by several; and he is fired at ten or twelve times before he is overtaken, and then he is asked, "are you the negro who broke into Salsbury's house?"   He answered, "yes."   Can it be doubted but that that answer was given under the influence of fear?   We cannot imagine any circumstance more calculated to excite the fears of a person than that he should be eagerly pursued by a band of armed men, who while in the hot pursuit discharge at him ten or a dozen firearms.

The case of *State* v. *Dildy, supra,* is similar, but not so strong in its facts as this case.   There, the prisoner was trying to escape and was twelve miles away when he was overtaken by three armed men who were in pursuit, and when asked by them, "what are you doing here?" he answered, "just walking about."   He was then asked, "what made you kill Charles Gay?"   The answer to this question was objected to by the prisoner's counsel on the ground that it must appear to the court that the answer was extorted by undue influence or terror, but His Honor overruled the objection, and the witness then testified that the prisoner inquired, "is he dead?"   To which witness replied, "you ought to know he is dead when you killed him."   The witness then under objection was permitted to give the confessions of the prisoner as the facts of the homicide.   The prisoner was found guilty, but this court awarded him a *venire de novo* on the ground the confession was not voluntary.

To admit the prisoner's confession under the circumstances disclosed in our case, would do violence to the well settled principles of the common law, that no confession of

a person shall be used against him when elicited by induce-
ments or threats, or by the influence of hope or fear. And
it is as well settled that where confessions have been made
under either of such influences, confessions subsequently
made will be presumed to proceed from the same influence,
until the contrary be shown by clear proof. While this pre-
sumption remains unanswered, these latter confessions,
though induced by no immediate threat or promise, are not
admissible evidence. *State* v. *Roberts*, 1 Dev., 259. Under
this authority the confession made the next day after the
arrest to Mr. Salsbury was inadmissible. If Mr. Troy, the
person in authority over the prisoner, who was then present,
had put him upon his guard or had given him a proper
caution, the confessions then made might have been consid-
ered voluntary, and therefore admissible. But when the
prisoner is brought into the presence of Salsbury and the
others, he is told by Mr. Troy, "sit down; Mr. Salsbury
wishes to interview you." Although there was nothing
harsh in the treatment, it was not calculated to reassure the
prisoner or dissipate the fears excited by the violent and
alarming circumstances attending his arrest on the previous
day. What was said by the prisoner in reference to the
person who had the overcoat of Mr. Salsbury, (that much
of his confession) was admissible, but the rule is it must be
strictly confined to such confessions. *State* v. *Lindsey*, 78
N. C., 499.

PER CURIAM. *Venire de novo.*