STATE OF NORTH CAROLINA v. FRANK JAMES SILVER

No. 35

(Filed 14 April 1975)

1. **Criminal Law § 76— admissibility of confession — consideration of voir dire evidence only improper**

    In determining the admissibility of a confession, the Court must look to the entire record, not merely to the evidence presented on a *voir dire* hearing.

2. **Criminal Law § 76— involuntary confession — admissibility of subsequent confession — presumption**

    Where a confession has been obtained under circumstances rendering it involuntary, a presumption arises which imputes the same prior

influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence.

**3. Criminal Law § 76— voir dire to determine voluntariness of confession — necessity for findings of fact**

The general rule is that when the trial judge concludes a *voir dire* hearing concerning the admissibility of a confession, he should make findings of fact to show the bases of his rulings.

**4. Criminal Law § 76— prior inculpatory statement — no determination of voluntariness — error**

Evidence in this murder case did not support the trial court's finding that, "On December 22, 1973, and before the defendant made any statement to the Sheriff concerning any of the events surrounding the death of Mrs. Mary C. Powell, the Sheriff advised the defendant as follows . . . , " since there was evidence that defendant made inculpatory statements to the sheriff on 20 December 1973; further, in view of the patently incriminating nature of the statements made on 20 December, it was incumbent upon the trial judge during the *voir dire* hearing to find facts, to enter proper conclusions, to rule on the voluntariness of the statements, and if the statements were found to be involuntary, to determine whether the State had met its burden of overcoming the prior influences which rendered the 20 December statements involuntary, thus causing no presumption of involuntariness to be imputed to the 22 December confessions.

**5. Constitutional Law § 36; Homicide § 31— first degree murder — death sentence constitutional**

Imposition of the death penalty in a first degree murder case was constitutional.

APPEAL by defendant from *Rouse, J.,* 1 April 1974 Session of NASH Superior Court.

Defendant, by a bill of indictment proper in form, was charged with the murder of Mary C. Powell.

The State's evidence tended to show the following facts:

On Saturday morning, 15 December 1973, Almeta Mills, a part-time domestic employee, went to the Powell home to work and there discovered Mrs. Powell's body on the floor near the fireplace in the front room. She immediately went to Ned. Pittman's house for help. Pittman, who lived on Mrs. Powell's farm, went to Avent's store and requested Mrs. Avent to notify the Nash County Sheriff's Department. Mrs. Powell lived alone, and Ned Pittman had cut wood and placed it on her porch on the preceding Friday but did not see Mrs. Powell at that time.

James Harrison, apparently the last person to see Mrs. Powell alive, testified that he went to Mrs. Powell's home on

Thursday, 13 December, between 4:00 and 5:00 p.m. and talked with her at that time. Charles Thomas Battle testified that he observed an automobile parked near the Powell home between 8:00 and 9:00 p.m. on 13 December 1973. The automobile appeared to be a 1968 or 1969 Roadrunner and was painted with fluorescent stripes. Howard Jones also testified that he noticed a two-tone Roadrunner automobile parked in the same driveway on the night of 13 December. Wilma Jones also saw a two-tone Roadrunner in the same locality on Thursday night, 13 December.

Jimmy Smith, Jr., testified that he obtained a .25 caliber automatic Galesi pistol for Mrs. Powell. Ernest Richardson testified that he purchased a .25 caliber Galesi pistol from defendant for thirty-two dollars on Friday, 14 December, and that he later delivered this pistol to an SBI agent. William Driver stated that about 7:00 p.m. on 13 December 1973, defendant came to his store and purchased four Victor twelve-gauge shotgun shells.

Upon being notified of Mrs. Powell's death, Sheriff G. O. Womble and A.B.C. Officers Joyner and Driver proceeded to the Powell home, where they found Mrs. Powell's body in the front room of her house. She had been shot in the area of her right buttock, and the shot formed a pattern of approximately six inches in area. Mrs. Powell was dead; her body was stiff. The officers observed a hole in the window of the front room, and glass from the window pane was strewn inside the front room. They also found inside the room a shotgun wadding and a spent twelve-gauge Victor shell casing on the edge of a path leading to the Powell home. During Sheriff Womble's testimony he stated that he talked with defendant on 22 December 1973. At this point counsel for defendant objected, and the trial judge excused the jury and conducted a *voir dire* hearing to determine the admissibility of statements made by defendant.

Sheriff Womble testified that, on 22 December 1973, defendant, who was then in the Nash County Jail, sent for him. The Sheriff and Deputy Sheriff Doughtie went to the jail and talked to defendant. Sheriff Womble stated:

"He had given me his name, his age, and his address. I told him that that was all the law required him to tell me, that he did not have to make any other statements, and that any statement he did make could and would be used

against him in court. I told him that he had a right to have a lawyer of his own choosing if he wanted one; that if he wanted one and was not able to afford one that one would be appointed for him before any questions were asked or during questioning. I also told him that if he decided to answer any questions without an attorney that he had a right to quit answering them, quit talking, any time he wished to. And I asked him if he understood his rights and if he understood what I had just told him. He said he did. I asked him if he wanted a lawyer present now, and he said, 'No.' I asked him if he wanted to make any statements, and he said he did."

The Sheriff further stated that he did not at any time either threaten defendant in any way or make any promises to him. On this occasion Silver made a partial statement and then indicated that he would stop talking unless Ernest Simmons was brought in. Simmons was brought in, and Silver thereupon completed his statement. On cross-examination the Sheriff stated that he had talked to defendant on 20 and 21 December.

On 20 December defendant and his wife came to the courthouse pursuant to a message concerning a repossession of defendant's car. At that time, defendant's wife told the Sheriff in defendant's presence about a telephone call made by defendant. In this connection, the Sheriff said:

". . . The only thing in the world I had was I had a description of a car that partly fitted his, and I was trying to find the owner of that car to talk to him to see if he had seen anything or heard anything. I didn't know anything other than that."

On the same morning Mr. Frank Brown, defendant's parole officer, requested defendant to speak certain words into a tape recorder, and defendant complied. Defendant was arrested and charged with murder sometime on 20 December. Simmons also was arrested *on Thursday, 20 December,* again as a result of statements that defendant made to the officers. On the same day (20 December), Silver accompanied the Sheriff and SBI Agent Dowdy to the home of Ernest Richardson, where a .25 Galesi pistol was obtained from Richardson. Sheriff Womble testified that he warned defendant of his rights when he talked with him on Thursday. On Friday defendant sent for Sheriff Womble twice, and the Sheriff told defendant that he did not want to

State v. Silver

talk to him and that he needed a lawyer. Defendant made some statements, and the Sheriff told him that if he still wanted to talk, he and Deputy Doughtie would see him on the next day. The Sheriff said that he warned defendant of his rights on Thursday, Friday, and Saturday, and on each occasion defendant told the Sheriff that he did not want a lawyer. The Sheriff denied that he told defendant that he would recommend that defendant be charged with a lesser offense. Defendant, on 22 December, made a full incriminatory statement to the Sheriff.

Defendant, on *voir dire,* testified that Parole Officer Frank Brown and SBI Agent Dowdy came to his father's home where he was living, and Brown told him that they wanted to see him in Nashville about a car and something else. He drove his car to Nashville, where he met Mr. Brown, who then told him they wanted to see him about his car and "something that had happened over and around Gold Rock." He went to the Sheriff's office, and while there Mr. Brown asked him to repeat something on a tape. He was given no warnings by the officers, and he asked the officers on four occasions to contact his lawyer, Mr. Rosser. They refused. Later the officers told him that his wife, who was in another part of the courthouse, had told them about the telephone call. When he saw his wife, she said that she told them about the phone call only after they told her that he had admitted making the call. He went to Hollister to get the pistol and told the Sheriff other things about the crime because the Sheriff told him that he was only going to charge him with second-degree murder or manslaughter.

Defendant's father, Frank James Silver, testified that he; his son, James, Jr.; his daughter Geraldine; and Frank's wife saw defendant at the courthouse in Nashville about 8:00 p.m. on Thursday, 20 December. Sheriff Womble, SBI Agent Dowdy, and Frank Brown were also present. At that time the Sheriff said, "The boy has cooperated with us so good I am going to talk with the Solicitor and the Judge and try to get his case from first degree murder to second degree murder." James Silver, Jr., gave testimony which tended to corroborate that of his father. Sheriff Womble, in rebuttal, testified that defendant did not mention to him Mr. Rosser's name or any other lawyer's name on Thursday, 20 December.

---

---

At the conclusion of the *voir dire,* the trial judge found facts and concluded:

"1. The defendant, Frank James Silver, was placed under arrest upon a charge of murder in the first degree during the evening of Thursday, December 20, 1973.

2. At the time he was arrested he was at the courthouse in Nashville.

3. Following his arrest the defendant was placed in jail in the Nash County Jail, where he remained.

4. The defendant was informed on Friday, December 21, 1973, that a lawyer would be appointed for him if he could not get his own. The Sheriff advised him that he would get the Clerk to talk to him and fill out the papers. The defendant indicated that he did not want the Sheriff to get him a lawyer.

5. During the morning hours of Saturday, December 22, 1973, the defendant sent for Sheriff G. O. Womble.

6. *On December 22, 1973, and before the defendant made any statement to the Sheriff concerning any of the events surrounding the death of Mrs. Mary C. Powell,* the Sheriff advised the defendant as follows. That the defendant did not have to make any statements and that any statements that he made could and would be used against him in court; that he had a right to have a lawyer of his own choosing if he wanted one; that if he was not able to afford one that one would be appointed for him before any questions were asked or during questioning; that if he decided to answer any questions without an attorney that he had the right to quit answering or quit talking any time he wished to.

7. After the foregoing warning was given to the defendant, the Sheriff asked him if he understood his rights and if he understood what he had just told him. The defendant replied that he did.

8. The Sheriff then asked the defendant if he wanted a lawyer present, and the defendant replied, 'No.' Whereupon, the Sheriff asked him if he wanted to make any statements, and the defendant said that he did.

9. The defendant is 22 years of age and has testified on this voir dire. He is in full control of his mental faculties and from observation the Court is of the opinion that he has sufficient mental capacity to fully understand the proceedings and the warning which was given to him by the Sheriff.

10. The defendant fully understood the warning which had been given to him by the Sheriff and fully understood what he was doing when he waived his right to counsel. The defendant was not promised anything nor was he threatened in any way. The defendant did not request the presence of counsel at any time. His family knew he was in custody from the time of his arrest.

11. The defendant was not confused at the time of his interview with the Sheriff.

UPON THE FOREGOING FINDINGS OF FACT, THE COURT CONCLUDES:

1. That there was no offer of hope, reward or inducement to the defendant to make a statement.

2. That there was no threat or suggested violence or a show of violence to persuade or induce the defendant to make a statement.

3. *That any statement made by the defendant to Sheriff Womble on December 22, 1973 was made voluntarily, knowingly and understandingly.*

4. That the defendant was in full understanding of his constitutional rights to remain silent and rights to counsel.

5. That he purposely, freely, knowingly and voluntarily waived each of those rights and, thereupon, made a statement to Sheriff Womble.

6. That the warning given by Sheriff Womble was in all respects in compliance with the requirements of 'Miranda.' " (Emphasis supplied.)

Judge Rouse thereupon overruled defendant's objection to the admission of statements made by defendant.

The jury returned to the courtroom, and Sheriff Womble, in substance, testified as follows:

Silver had told him that he and Ernest Simmons had been drinking together and that they went to Mrs. Powell's home on his (Silver's) automobile and parked about sixty-five yards north of the Powell driveway. Simmons then went up to the house, came back, and told him that Mrs. Powell was looking at television and that she had a big dog in there. He stated that he was not going into the house unless they had a gun to kill the dog. They thereafter went to Driver's store, and defendant went in and bought four gun shells. They then went to his father's house and obtained a single-barrel shotgun from under his father's bed. They then returned to a point about one hundred seventy-five yards from the Powell home, where they pulled into a driveway on the opposite side of the highway. They then went to Mrs. Powell's house with the intention of robbing her. As they were going up the drive, he loaded the shotgun, and it went off. When he unbreached the gun, the shell flew out. Mrs. Powell looked out the window, and they retreated and came to the house from another direction. He stepped up on the edge of the front porch, brought the gun up, and it went off accidentally as he was trying to get the safety off. They entered the house and found Mrs. Powell lying flat of her back in front of the fireplace. He stayed in the room with Mrs. Powell while Simmons ransacked the house. They found a .25 automatic pistol in a little box containing eight or nine dollars. He wanted to make a telephone call to get assistance for Mrs. Powell, who was still breathing, but Simmons told him to "let the old bitch die." They also obtained a double-barrel shotgun and a rifle from the Powell home. They left the Powell home, returned his father's shotgun, and went to the Simmons home, where they left the stolen shotgun and rifle. He then went and picked up his wife at Martha Jones's home. Silver stated that he sold the .25 automatic pistol to a man at Hollister. After talking with defendant, the Sheriff, SBI Agent Dowdy, Silver, and his wife went to the home of Ernest Richardson, where they obtained a .25 automatic pistol from Richardson. Richardson stated at the time that he bought the pistol from Silver on 14 December. (According to Sheriff Womble's *voir dire* testimony, this trip to Hollister occurred on *Thursday, 20 December.*)

During the course of his statement, Silver said that he did not want to say anything else until they brought Ernest Sim-

mons in. Simmons came into the room, and he completed his statement. Thereafter, Silver accompanied the officers to the Powell premises and showed them where the automobile was parked and retraced their route as they approached the Powell home. He showed them where Mrs. Powell was lying in the front room and showed the officers where they found the .25 pistol.

Dr. D. E. Scarborough, a physician specializing in pathology, testified that the cause of Mrs. Powell's death was hemorrhage resulting from gunshot wounds.

Frederick Mark Hurst, Jr., of the SBI Technical Crime Laboratory testified that the shotgun obtained from defendant's father fired the shell that was found in the driveway at the Powell home.

The State rested. Defendant offered no evidence.

*Attorney General Rufus L. Edmisten, by Assistant Attorneys General William W. Melvin and William B. Ray, for the State.*

*L. G. Diedrick for defendant.*

BRANCH, Justice.

The principal question presented by this appeal is whether the trial judge erred in admitting into evidence defendant's custodial confession.

[1] This record clearly discloses that the trial judge based his conclusions of law upon facts found on the basis of evidence related solely to events which took place on 22 December 1973. If we were restricted to consideration of evidence elicited solely on *voir dire,* the trial judge's findings would be adequately supported by the evidence and therefore would be binding on this Court. Further, such findings would support the conclusions of law entered by Judge Rouse, and his conclusions of law would, in turn, support his ruling. *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404; *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561; *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37; *State v. Barber,* 270 N.C. 222, 154 S.E. 2d 104; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453; *State v. Hammonds,* 229 N.C. 108, 47 S.E. 2d 704; *State v. Vann,* 82 N.C. 631. However, in determining the admissibility of a confession, we must look to the entire record,

not merely to the evidence presented on a *voir dire* hearing. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed. 2d 895; *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed. 2d 242; *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753. The conflicting holding of this Court in *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, can no longer be considered authoritative.

[2] It is well settled "that where a confession has been obtained under circumstances rendering it involuntary, a presumption arises which imputes the same prior influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence." *State v. Moore,* 210 N.C. 686, 188 S.E. 421. The burden is upon the State to overcome this presumption by clear and convincing evidence. *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492; *State v. Woodruff,* 259 N.C. 333, 130 S.E. 2d 641; *State v. Hamer,* 240 N.C. 85, 81 S.E. 2d 193; *State v. Gibson,* 216 N.C. 535, 5 S.E. 2d 717; *State v. Drake,* 113 N.C. 625, 18 S.E. 166; *State v. Drake,* 82 N.C. 592; *State v. Lowhorne,* 66 N.C. 638; *State v. Roberts,* 12 N.C. 259.

The trial judge's findings of fact, conclusions of law, and ruling concerning defendant's confession were made without any consideration of statements made prior to 22 December. In fact, very little appears in the record concerning defendant's statements to officers on 20 December; nevertheless, a contextual reading of the record points unerringly to the conclusion that defendant made an inculpatory statement on that date. The record reveals that before Sheriff Womble talked to defendant on 20 December, he did not know that he was going to talk with him "about a murder matter" but was "simply trying to find out who made a telephone call." Although we can glean little concerning either defendant's statements of 20 December or the circumstances under which they were made, the record does show that after the officers talked with defendant, his alleged accomplice, Ernest Simmons, was arrested on that same day and charged with the murder of Mrs. Mary C. Powell. In this connection, the Sheriff stated: "I didn't know I wanted Simmons until Silver told me." According to Sheriff Womble, defendant was not suspected of murdering Mrs. Powell when he was invited to the courthouse; yet, defendant was arrested and charged with her murder *after* his conversation with the officers on 20 December. Further, according to Sheriff Womble's *voir*

*dire* testimony and the testimony of SBI Agent Dowdy before the jury, they took defendant on that same day to the home of Ernest Richardson at Hollister, where they obtained the pistol later identified as being the property of the deceased. At that time Richardson stated that defendant sold the pistol to him on Friday, 14 December, the day after Mrs. Powell's death. Thus, we are unable to escape the conclusion that defendant made incriminatory statements to the officers while in custody on 20 December.

[3] The general rule is that when the trial judge concludes a *voir dire* hearing concerning the admissibility of a confession, he should make findings of fact to show the bases of his rulings. *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53; *State v. Bishop,* 272 N.C. 283, 153 S.E. 2d 511; *State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569. In *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344, *vacated and remanded on other grounds,* 375 U.S. 28, 84 S.Ct. 137, 11 L.Ed. 2d 45, this Court considered the requirements of a *voir dire* hearing as related to admissibility of a confession. There Justice Higgins, for the Court, wrote:

" . . . Under present procedure it is essential not only that a full investigation be made and the evidence recorded, but the facts must be found which disclose the circumstances and conditions surrounding the making of the incriminating admissions. . . ."

We dealt with a similar question in *State v. Williford,* 275 N.C. 575, 169 S.E. 2d 851. There the arresting officer testified that he placed defendant, who was wounded and bleeding profusely at the time, under arrest and carried him to the hospital. He further stated that he fully warned defendant of his *Miranda* rights and subsequently talked with him in the emergency room of the hospital. While he was still in great pain and receiving treatment in the emergency room, defendant made incupatory statements in response to the questions of police officers. At the conclusion of the *voir dire* hearing, the court found that the officers had properly warned defendant of his rights although it made no finding as to defendant's mental or physical condition and as to the immediate circumstances and conditions surrounding the making of the purported confession. This Court unanimously held that the failure to make such findings was prejudicial error:

" . . . Clearly the evidence in the case sustains the facts found; however, the findings of fact are not sufficient to

support the conclusion that the statements made by the defendant . . . to [the law enforcement officer] . . . were made voluntarily and with understanding."

Here the trial judge's crucial finding of fact is Finding Number 6 which, in part, states:

"6. On December 22, 1973, and before the defendant made any statement to the Sheriff concerning any of the events surrounding the death of Mrs. Mary C. Powell, the Sheriff advised the defendant as follows. That the defendant did not have to make any statements . . . . "

[4] We do not think that the evidence supports Finding of Fact Number 6. Further, in view of the patently incriminating nature of the statements made on 20 December 1973, we think that it was incumbent upon the trial judge during the *voir dire* hearing to find facts, to enter proper conclusions, and to rule on the voluntariness of the statements made on 20 December. If such statements were found to be involuntary, he should have determined whether the State had met its burden of overcoming the prior influences which rendered the 20 December statement involuntary. Of course, if the first statements were found to have been voluntarily made, no presumption of involuntariness would have been imputed to the 22 December confessions. We note in passing that the only evidence in the record concerning the propriety of the 20 December statement was the general statement by Sheriff Womble, elicited on cross-examination, that he warned defendant of his rights on 20 December 1973. There is no showing and finding that defendant intelligently and understandingly rejected an offer of counsel on 20 December, *State v. Blackmon,* 284 N.C. 1, 199 S.E. 2d 431, or that he understandingly and voluntarily made the inculpatory statement which led to his being charged with murder.

We express no opinion as to whether the confession of 22 December, admitted into evidence, was voluntary or involuntary. We conclude only that the meager evidence and the lack of findings and proper conclusions as to the 20 December statements make it impossible for us to determine whether the 22 December statement was correctly admitted.

[5] Defendant's assignment of error concerning the imposition of the death penalty has been answered adversely to him in *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721. *Accord: State*

State v. Silver

*v. Lampkins,* 286 N.C. 497, 212 S.E. 2d 106; *State v. Avery,* 286 N.C. 459, 212 S.E. 2d 142; *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113; *State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712; *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844; *State v. Fowler,* 285 N.C. 90, 203 S.E. 2d 803; *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750. This assignment of error is overruled on the authority of the above-cited cases.

We do not deem it necessary to consider the remaining assignments of error since they relate to matters which may not recur at the next trial.

For the reasons stated, there must be a

New trial.