STATE OF NORTH CAROLINA v. HERMAN LEROY RIDDICK, JR.

No. 16

(Filed 21 December 1976)

1. **Searches and Seizures § 3— affidavit for search warrant — meaning of probable cause**
   Within the meaning of the Fourth Amendment and G.S. 15-25(a), now G.S. 15A-243 to 245, probable cause means a reasonable ground to believe that the proposed search will reveal the presence, upon the premises to be searched, of the objects sought and that those objects will aid in the apprehension or conviction of the offender.

2. **Searches and Seizures § 3— affidavit for search warrant — sufficiency**
   An affidavit for a search warrant contained a sufficient recital of facts and underlying circumstances to constitute probable cause for issuance of a warrant to search the home in which defendant lived where the affidavit detailed the presence of tracks made by tennis shoes with a diamond tread leading from a murder victim's residence to a point near defendant's premises, specified reasons for searching those premises for tennis shoes with a diamond tread, for the possible murder weapon, and for loot stolen from the victim's home, and gave reasons why such evidence might be found in the home occupied by defendant.

3. **Searches and Seizures § 1— seizure of items in plain view**
   Where a lawfully issued search warrant authorized officers to search premises occupied by defendant's parents and cousin, and while

searching the cousin's room the officers saw, through an open doorway, a pair of tennis shoes similar to those described in the warrant and later determined to belong to defendant, the officers lawfully seized the tennis shoes since an item is lawfully seized if the officer is at a place where he has a legal right to be and the item seized is in plain view.

**4. Searches and Seizures § 4— warrant to search for tennis shoes — seizure of three pairs**

Where a warrant authorized officers to search a home for tennis shoes with a diamond tread, officers were not required to terminate the search once one pair of tennis shoes was seized, and when the officers discovered three pairs of shoes fitting the description in the warrant, it was lawful to seize all three pairs. G.S. 15-25.

**5. Searches and Seizures § 2— validity of consent to search**

There is no merit in defendant's contention that his consent to a second search of his residence was invalid because officers advised him they had seized the wrong clothing initially and his "consent" for an additional search was only acquiesence and thus not free and voluntary where the record shows that defendant told the officers they had seized the wrong clothes—not the other way around, and defendant himself suggested that the officers exchange the clothing then in their possession for the clothing he said he was actually wearing on the day of the crime.

**6. Criminal Law § 76— admissibility of confession — necessity for voir dire**

When the admissibility of an in-custody confession is challenged, the trial judge must conduct a *voir dire* to determine whether the requirements of the *Miranda* decision have been met and whether the confession was in fact voluntarily made.

**7. Criminal Law § 76— admissibility of confession — voir dire — necessity for findings of fact**

If there is a material conflict in the evidence on *voir dire* to determine the admissibility of a confession, the trial judge must make findings of fact to resolve the conflict; if there is no conflict in the evidence on *voir dire*, or if there is a conflict in evidence which is immaterial and has no effect on the admissibility of the confession, it is not error to admit the confession without findings, although it is the better practice to make findings.

**8. Criminal Law § 75— officer's expression of opinion — no resumption of interrogation**

An officer's expression of opinion that defendant knew something about the crime and was not telling the truth did not constitute a resumption of interrogation within the meaning of the *Miranda* decision.

**9. Criminal Law § 75— statements after assertion of right to remain silent — no continued interrogation**

There was no continued interrogation of defendant in violation of the *Miranda* rules after defendant stated he would not answer fur-

---

State v. Riddick

---

ther questions and wanted to consult a lawyer, and statements made by defendant after he asserted his right to remain silent were admissible in evidence, where the evidence on *voir dire,* including testimony by defendant, showed that his right to cut off questioning was promptly honored when asserted, and that defendant simply reflected upon the incredibility of the original story he told officers in light of the evidence against him, decided to change his statement to make it more plausible, and invited the officers to listen while he related his revised version.

10. **Criminal Law § 34— position of victim's body and derangement of clothing — admissibility**

Evidence in a murder case that deceased was found with her dress above her knees and that her undergarments were torn did not show the commission of another criminal offense (rape) where other evidence showed deceased had not been sexually assaulted; furthermore, such evidence was admissible as proof of circumstances so connected in point of time and place with the murder itself that proof of one necessarily involved proof of the other.

11. **Criminal Law § 99— questions by trial judge — no expression of opinion**

The trial court in a homicide case did not express an opinion in violation of G.S. 1-180 in asking questions to clarify and promote a proper understanding of the testimony of the witnesses.

12. **Criminal Law § 166— abandonment of assignments of error**

Assignments of error not discussed in the brief are deemed abandoned under Rule 28(a) of the Rules of Appellate Procedure.

13. **Constitutional Law § 36; Homicide § 31— substitution of life imprisonment for death penalty**

Sentence of life imprisonment is substituted for the death penalty imposed for first degree murder.

DEFENDANT appeals from judgment of *Cohoon, J.,* 10 November 1975 Session, PASQUOTANK Superior Court.

Defendant was tried upon a bill of indictment charging him with the first degree murder of Bertha Pritchard Dozier on 26 June 1975 in Pasquotank County. He was ably represented at trial by C. Glenn Austin, court-appointed counsel. Subsequent to defendant's conviction Frank W. Ballance, Jr., was retained as private counsel to perfect this appeal, and appointed counsel was released by the court.

On 26 June 1975 at approximately 1:45 p.m. Mrs. Bertha Pritchard Dozier, sixty-nine years of age, was found on the dining room floor of her son's home where she lived, facing upward, her head in a pool of blood, her skull crushed, two

gashes about four inches long on her right forehead and her clothing in disarray, exposing the lower body. Following an extensive investigation the defendant, Herman Leroy Riddick, Jr., was arrested, indicted, and bound over for trial.

Prior to trial defendant moved to suppress certain items of evidence allegedly obtained by an unlawful search and seizure and to suppress certain oral statements allegedly made by him after he had told the officers he did not want to answer any more questions and would like to talk to an attorney. In a pretrial *voir dire* hearing upon that motion, SBI Agent Jack Brinson testified that upon discovery of the body officers were called to the premises to conduct an investigation. Fresh tracks made by tennis shoes were found leading from the victim's residence to a point 100 yards from the home of H. Leroy Riddick and wife Velma Riddick, parents of defendant, with whom defendant and his wife lived. Defendant's cousin Anthony Riddick also lived there. Anthony, the original suspect in this case, had been seen wearing tennis shoes with a tread pattern similar to the tracks. A search warrant was obtained authorizing the officers to search the Riddick premises for an ax, a pair of tennis shoes with diamond tread, clothing with blood splatters, a lady's brown wallet or any papers connected with the deceased, and to search the person of Anthony Riddick for fingerprints, hair sample, blood sample and scrapings from beneath the fingernails.

The search was conducted on 27 June 1975, the day following the murder of Mrs. Dozier. Three pairs of tennis shoes were seized—one from Anthony Riddick, one from defendant and one from defendant's brother Carlos Riddick. During this search SBI Agent Brinson, in defendant's presence, seized a blue T-shirt which he had reason to believe had been worn by the murderer. Defendant said it belonged to his sister and shortly thereafter delivered to the officers a pair of blue bell-bottom dungarees, and a blue zip-up type of knit shirt which he said he was wearing on the date of the murder.

SBI Agent Brinson first interrogated defendant on 27 June 1975 at the sheriff's office in Elizabeth City. After he had been fully warned of his constitutional rights as required by the *Miranda* decision, defendant waived his right to silence and agreed to answer questions without the presence of a lawyer. Defendant's testimony at this time tended to show that he did

not go in or near the Dozier residence on the day in question. With respect to his clothing, he stated that he had worn a pair of bell-bottom dungarees with the seat split, a blue zip-up shirt and the pair of tennis shoes the officers had seized in the search.

SBI Agent Brinson testified he next saw defendant on 2 July 1975 when Officer Wise brought him to the sheriff's office to take his picture and fingerprints. Although defendant had previously been advised of his constitutional rights he was again given the *Miranda* warnings in full and stated that he understood his rights. With those rights in mind, defendant stated that he wished to answer questions without the presence of a lawyer. He was then interrogated for approximately one hour during which he gave substantially the same detailed account of his activities on 26 June 1975 as he had given in his previous statement. After being shown a torn blue T-shirt tending to establish his presence at the scene of the crime, defendant made a different statement which, though still exculpatory, indicated that he had been inside the Dozier residence on the day in question. It is to the admission of this statement that defendant objects. The circumstances surrounding the defendant's decision to make the second statement will be developed in the body of the opinion.

At the end of the *voir dire* the trial judge entered the following order:

"At the end of the voir dire conducted prior to the trial of the case, the voir dire heard on November 6, 1975, at which time both the State and the defendant offered evidence as to the extrajudicial statements of the defendant, and as to certain personal property which the State would propose to offer in evidence, the said property being a pair of tennis shoes, and a light blue shirt, the defendant objecting to the admission of the extrajudicial statements, and the two items of personal property, on the grounds that there was no proper search warrant issued under which the tennis shoes were found, and that the statement made by the defendant, which the State proposes to offer in evidence, was made as the fruit of an illegal search, and that objecting to the offering of the introduction of the

blue shirt on the grounds that it was the fruit of an illegal search, the Court finds the following facts:

(1) That the affidavit on which the search warrant was issued states facts sufficient upon which the magistrate could find probable cause upon which to issue a search warrant, and that the search warrant was validly issued;

(2) The Court finds further that in the course of the search of the premises of Herman Leroy Riddick, Velma Riddick, and Anthony Riddick, described in the search warrant, Officer Jack D. Brinson, an agent with the SBI, while in one part of the house saw through the open door into the room which the defendant contends was under his control, and while looking through the door, SBI Agent Brinson saw a pair of tennis shoes which he took as evidence; that there was no need for a search warrant to search the room of the defendant in view of the fact that SBI Agent Brinson was in a place where he had a right to be as a result of the search warrant, and the tennis shoes were in his plain view at that time;

(3) The Court finds further that the search warrant was validly issued to search the entire premises, and that the fact that the defendant contends that he had chosen one room of the house does not give him any standing to object to the search of the room.

The Court has therefore concluded that the tennis shoes are admissible in evidence.

The Court further finds that upon the questioning of the defendant by Agent Brinson and Agent W. E. Godley, both of whom are agents of the SBI, the defendant was fully warned of his right to have an attorney before he made a statement, and of his right to remain silent; that the defendant freely, voluntarily and understandingly waived his right to have an attorney, and waived his right to remain silent, and that any statements he made on that day are admissible in evidence against him.

The Court further finds that at the time of the interrogation of the defendant on July 2, 1975, by SBI Agent Brinson, and SBI Agent O. L. Wise, both of whom are agents of the SBI, the defendant was again fully warned

State v. Riddick

of his right to remain silent, and of his right to have an attorney before he made any statement, and that the defendant freely, voluntarily and understandingly waived his right to remain silent, and his right to have counsel, and that any statements he made at that time may be offered into evidence in this case.

The Court finds further that on July 27, 1975, Mr. Brinson and Mr. Wise, agents of the SBI, accompanied the defendant to the residence of his parents, where he was living at that time, and after being on the premises as a result of the search warrant previously issued that they were invited by the defendant to come on the premises, and that the blue shirt which was in plain view of Agent Brinson while he was on the premises, and which was found at that time, is admissible in evidence.

The defendant's Motion to Suppress these items of evidence is DENIED."

At defendant's trial which commenced on 10 November 1975 SBI Agent Brinson was examined before the jury and testified substantially in accord with the evidence he had given on *voir dire*. Defendant's tennis shoes, blue T-shirt, and incriminating statements to the officers were admitted over objection.

The testimony of FBI Agent Mark Gass, Jr.,. before the jury corroborates the evidence given by SBI Agent Brinson.

The State offered medical evidence tending to show that Mrs. Dozier died about the noon hour on 26 June 1975 from a depressed skull fracture with laceration of the brain substance. The medical witnesses were of the unanimous opinion that Mrs. Dozier died almost instantaneously with the infliction of the blow that fractured the skull and that she could not thereafter have made any purposeful movement, *i.e.*, attempted to move her head or body or reach for an object.

Defendant offered no evidence. He was convicted of murder in the first degree and sentenced to death. His appeal to this Court assigns errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General; John M. Silverstein, Special Deputy Attorney General, for the State of North Carolina.*

*Frank W. Ballance, Jr., attorney for defendant appellant.*

State v. Riddick

HUSKINS, Justice.

Was the search warrant in this case issued upon a showing of probable cause to search the described premises? If so, the search warrant was validly issued; otherwise not. *State v. Ellington*, 284 N.C. 198, 200 S.E. 2d 177 (1973) ; *State v. Campbell*, 282 N.C. 125, 191 S.E. 2d 752 (1972). Defendant contends no probable cause was shown in the affidavit upon which the warrant was issued and the court therefore erred in admitting the fruits of the search. This constitutes his first assignment of error.

[1]  Within the meaning of the Fourth Amendment and G.S. 15-25 (a), now G.S. 15A-243 to 245, probable cause means a reasonable ground to believe that the proposed search will reveal the presence, upon the premises to be searched, of the objects sought and that those objects will aid in the apprehension or conviction of the offender. *State v. Campbell, supra.* Thus, the affidavit upon which a search warrant is issued is sufficient if it "supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender." *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971).

[2]  Here, the affidavit in question detailed the presence of tracks made by tennis shoes with a diamond tread leading from the victim's residence to a point near the Riddick premises. It specified reasons for searching those premises for tennis shoes with a diamond tread, for the possible murder weapon, for loot stolen from the victim's home, and gave reasons why such evidence might be found in the Riddick household. We hold the affidavit contains a sufficient recital of facts and underlying circumstances to constitute probable cause for issuance of the search warrant.

In the alternative, defendant argues that the search warrant, even if validly issued, did not cover the room occupied by him and his wife. Thus he contends the seizure of his shoes and clothing was illegal. For the reasons which follow, this contention has no merit.

[3, 4]  The lawfully issued search warrant authorized the officers to search the premises occupied by Anthony Riddick, H.

State v. Riddick

Leroy Riddick and Velma Riddick. While searching Anthony's room the officers saw, through an open doorway, a pair of tennis shoes similar to those described in the warrant and later determined to belong to defendant. Seizure of these shoes was lawful. "[A]n item is lawfully seized even though it is not listed in the warrant if the officer is at a place where he has a legal right to be and if the item seized is in plain view." *State v. Rigsbee*, 285 N.C. 708, 208 S.E. 2d 656 (1974). *Accord, Harris v. United States*, 390 U.S. 234, 19 L.Ed. 2d 1067, 88 S.Ct. 992 (1968); *State v. Carey*, 285 N.C. 509, 206 S.E. 2d 222 (1974). Nor were the officers required to terminate the search once the tennis shoes of Anthony Riddick were seized. When the officers discovered three pairs of shoes, each of which fit the description in the warrant, it was lawful to seize all three pairs. G.S. 15-25 (Cum. Supp. 1974).

Defendant further argues that even if the search and seizure was constitutionally permissible, it was illegal under the new rules of criminal procedure, particularly G.S. 15A-253. It suffices to say that these rules were effective 1 September 1975 and thus are not applicable to this search which took place prior to that date. Even so, were the new rules applicable, the search and seizure here in question did not violate them.

[5] Defendant's final contention under his first assignment of error is that his alleged consent to a search on the afternoon of June 27 was invalid because the officers advised him they had seized the wrong clothing initially and his "consent" for an additional search was in reality only acquiescence and thus not free and voluntary. This contention has no merit because it finds no support in the record. The record discloses that defendant told the officers they had seized the wrong clothes—not the other way around, and defendant himself suggested that the officers exchange the clothing then in their possession for the clothing he said he was actually wearing on June 26. Under those circumstances, the officers returned to the Riddick home and, with defendant's free and voluntary consent, joined him in searching for a pair of bell-bottom dungarees and a blue zip-up shirt he said he was wearing on June 26. It was during that search that the officers saw the blue T-shirt on the washstand with a torn place in the front of it similar in size and shape to a blue scrap of material that had been found on the dining room floor where Mrs. Dozier's body was discovered. Moreover, the testimony of defendant's mother confirms and corroborates

the testimony of the officers that defendant freely consented to the search he now seeks to question. There is no merit in defendant's first assignment of error.

Defendant's second assignment is grounded on his contention that the court erred by admitting over objection his extrajudicial incriminating statement made to SBI Agents Brinson and Wise on July 2 after he had exercised his right to remain silent and to have an attorney present.

*Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), lays down the ground rules governing the admissibility of statements obtained from an accused during custodial police interrogation. These rules prescribe that the suspect must be advised (1) that he has a right to remain silent; (2) that anything he says can and will be used against him in court; (3) that he has a right to consult with a lawyer and to have a lawyer with him during interrogation; (4) that if he is an indigent a lawyer will be appointed to represent him; and (5) that if he at any time prior to or during questioning indicates that he wishes to stop answering questions or to consult with an attorney before speaking further, the interrogation must cease. The totality of circumstances under which the statement is made should be considered in passing upon its competency, *State v. Chamberlain,* 263 N.C. 406, 139 S.E. 2d 620 (1965); and the statement is rendered incompetent by circumstances indicating coercion or involuntary action. *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619 (1964).

**[6, 7]**   When the admissibility of an in-custody confession is challenged the trial judge must conduct a *voir dire* to determine whether the requirements of *Miranda* have been met and whether the confession was in fact voluntarily made. The general rule is that the trial judge, at the close of the *voir dire* hearing, *should* make findings of fact to show the bases of his ruling. *See State v. Silver,* 286 N.C. 709, 213 S.E. 2d 247 (1975); *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969). If there is a *material* conflict in the evidence on *voir dire* he *must* do so in order to resolve the conflict. *State v. Smith,* 278 N.C. 36, 178 S.E. 2d 597 (1970). If there is no conflict in the evidence on *voir dire,* it is not error to admit a confession without making specific findings of fact, although it is always the better practice to find all facts upon which the admissibility of the evidence depends. *State v. Biggs,* 289 N.C. 522, 223 S.E. 2d 371 (1976);

*State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971). In that event the necessary findings are implied from the admission of the confession into evidence. *State v. Whitley,* 288 N.C. 106, 215 S.E. 2d 568 (1975). If there is a conflict in the evidence which is *immaterial* and has no effect on the admissibility of the confession, it is not error to admit the confession without findings because the purpose of specific findings of fact is to show, for the benefit of the appellate court on review, the factual bases of the trial court's determination of admissibility. *State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569 (1966); *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833 (1966). Thus, where a conflict in the evidence is immaterial and does not affect the admissibility of the challenged statement, findings are not required, although, again, it is always the better practice to make findings.

The question now before us is whether the evidence on *voir dire,* considered in its totality, shows a violation of the *Miranda* rules by continued interrogation of defendant after 10:10 a.m. when he stated he would not answer any more questions and wanted to consult a lawyer. For the reasons which follow, we hold that it does not.

The record discloses that on 27 June 1975 and twice on 2 July 1975 defendant was fully advised of his constitutional rights as required by *Miranda.* On each occasion defendant stated that he understood his rights and, having them in mind, wished to answer the questions without a lawyer present.

When interrogated on June 27 defendant gave a detailed statement of his activities on June 26, the day Mrs. Dozier was murdered. In that narrative he stated he had worn a pair of bell-bottom dungarees, a blue zip-up shirt, and the pair of tennis shoes the officers had seized. He said he did not go in or near the Dozier house but was rabbit hunting with his dogs in the field behind the Dozier residence where the tennis shoe tracks were found.

When first interrogated on July 2 defendant substantially repeated his previous statement concerning his dress and activities on June 26. When the officers informed defendant that several witnesses said he was wearing a blue T-shirt on the day of the murder and exhibited the torn garment to him, defendant said he did not want to answer any more questions

and wanted to talk to an attorney. The interrogation thereupon ended at 10:10 a.m. SBI Agents Brinson and Wise and defendant left the interrogation room on the second floor of the courthouse and went to the sheriff's office on the first floor. There defendant called his mother, then one of the officers looked up the number for him and he telephoned the office of Attorney Glenn Austin and learned Mr. Austin was in Camden County. A phone call to Camden County by SBI Agent Wise disclosed that Mr. Austin had left to return to his office in Elizabeth City.

Defendant contends the officers continued to interrogate him while he waited in the sheriff's office for an opportunity to talk with lawyer Austin and after he had exercised his right to remain silent at 10:10 a.m. that morning. Defendant's voir dire testimony is to the effect that during the interval of time involved, *i.e.*, from 10:10 a.m. to approximately 10:45 a.m., he was permitted to and did make various telephone calls and was assisted by the officers in his attempt to locate Attorney Austin; that Agent Brinson said he believed defendant knew something about it and wasn't telling the truth and that Agent Wise said substantially the same thing; that, in fact, he had not been telling the truth and told the two officers he wanted to tell them the truth; that "[w]hen I told them I wanted to tell the truth, it was because I wanted to get it off my mind. It was my decision to do that."

[8, 9]    Defendant's own evidence does not support his contention that the officers continued to interrogate him after he exercised his right to remain silent at 10:10 a.m. Assuming *arguendo* that his *voir dire* testimony is true, we do not construe an officer's expression of opinion that defendant knew something about it and was not telling the truth as a resumption of interrogation within the meaning of *Miranda*. And defendant's testimony demonstrates that he was not mistreated or otherwise coerced. His testimony shows that his right to cut off questioning was promptly honored when asserted at 10:10 a.m. It also shows that *he* himself decided to talk further and asked the officers to resume talks with him so he could tell them the truth and get it off his mind. According to defendant, *it was his decision to do that*. Thus the total picture indicates neither coercion nor involuntary speech. It was not error to admit defendant's statement upon Judge Webb's finding that, after being fully warned of his rights, "the defendant freely, voluntarily and understandingly waived his right to remain silent, and

his right to have counsel, and that any statements he made at that time may be offered into evidence in this case." The *Miranda* rule that in-custody interrogation of a defendant must cease when the defendant indicates he wishes to remain silent, or wishes to consult counsel, or both, does not bar a subsequent statement by a defendant who, after having been fully advised of his constitutional rights, freely and voluntarily waives his right to remain silent and his right to counsel and invites the officer to resume talks with him. *Michigan v. Mosley,* 423 U.S. 96, 46 L.Ed. 2d 313, 96 S.Ct. 321 (1975); *State v. Jones,* 278 N.C. 88, 178 S.E. 2d 820 (1971); *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511 (1968).

So it is here. The record supports the conclusion that rather than continued interrogation during the thirty-five minute interval in question, defendant simply reflected upon the incredibility of his original story in light of the evidence against him, decided to change his statement to make it more plausible, and invited the officers to listen while he related his revised version. Defendant's second assignment of error is overruled.

[10] Defendant contends the trial court committed prejudicial error by allowing the State to elicit evidence over objection that the deceased was found with her dress above her knees and that her undergarments were torn, the implication being that she had been sexually molested when there was no evidence of sexual assault. Defendant argues that this evidence tending to show the commission of another criminal offense (rape) inflamed the jury against him and constitutes reversible error.

It suffices to say that the evidence shows Mrs. Dozier had not been sexually assaulted. Thus the challenged evidence does not show the commission of another criminal offense. Furthermore, the position of the victim's body when discovered and the derangement of her clothing at that time are simply circumstances which are so connected in point of time and place with the murder itself that proof of one necessarily involves proof of the other. The evidence was properly admitted. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). *See also State v. Moore,* 279 N.C. 455, 183 S.E. 2d 546 (1971) (in armed robbery case, evidence of stabbing after money taken was part of single transaction); *State v. Matheson,* 225 N.C. 109, 33 S.E. 2d 590 (1945) (threats against taxi driver in defendant's efforts to escape); *State v. Mitchell,* 193 N.C. 796, 138 S.E. 166

(1927) (fight with third person immediately after homicide). Defendant's third assignment is overruled.

[11] Defendant's fourth assignment is based on thirty-nine exceptions wherein defendant contends the trial judge violated G.S. 1-180 by expressing an opinion on the facts of the case. We have patiently examined each exception and find no basis whatsoever for defendant's contention. These exceptions relate to the judge's attempt to clarify testimony, to the action of the court in sustaining objections, to stipulations as to expert witnesses, to testimony that was favorable to defendant, and to clarifications of names, dates and locations. None have any merit. It is entirely proper, and often necessary, that the trial judge ask questions to clarify and promote a proper understanding of the testimony of the witnesses. *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). In so doing, the able trial judge in this case expressed no opinion in violation of G.S. 1-180. This assignment is overruled.

[12] Defendant's fifth and sixth assignments of error are not discussed in his brief and are deemed abandoned under Rule 28(a) of the Rules of Appellate Procedure, 287 N.C. 671 at 741.

Defendant's seventh and eighth assignments of error challenge the legality of the judgment imposing the death penalty. For the reasons which follow the challenge is sustained.

[13] In *Woodson v. North Carolina,* _____ U.S. _____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (decided 2 July 1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was indicted, convicted and sentenced to death. Therefore, by authority of the provisions of the 1973 Session Laws, Chapter 1201, Section 7 (1974 Session), a sentence of life imprisonment is substituted in lieu of the death penalty in this case. We deem further discussion of these assignments unnecessary.

Our examination of the entire record discloses no error affecting the validity of the verdict returned by the jury. The trial and verdict must therefore be upheld. To the end that a sentence of life imprisonment may be substituted in lieu of the death sentence heretofore imposed, the case is remanded to the Superior Court of Pasquotank County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first

degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish to the defendant and his attorney a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated.