STATE OF NORTH CAROLINA v. IVEY LEE WHITLEY

No. 82

(Filed 26 June 1975)

1. Criminal Law § 75— admission of confession — absence of express finding of voluntariness

Defendant's confession was properly admitted in evidence where the trial court made findings supported by the evidence on *voir dire* that defendant was given the Miranda warnings, that he was not intoxicated at the time of the confession, that he understood his rights and that he waived his rights in writing before making the statement; failure of the court to make an express finding that the confession was voluntary was not error where the evidence was not conflicting and tended to show the confession was voluntary.

2. Criminal Law § 23— guilty pleas — withdrawal by defendant — court's refusal to accept

In a prosecution for arson, felonious breaking and entering, larceny from the person, and assault with a deadly weapon with intent to kill, the trial court did not err in refusing to accept defendant's tender during trial of guilty pleas to the felonies of breaking or entering, larceny from the person and burning an unoccupied building where defendant stated during questioning by the court, "I believe I will go on and let the jury decide it."

3. Arson § 4; Burglary and Unlawful Breakings § 5; Larceny § 7— sufficiency of evidence for jury

The State's evidence, including testimony of the victim and defendant's confession, was sufficient for the jury in a prosecution for arson, breaking and entering and larceny from the person.

4. Arson § 6— life imprisonment — act making change in punishment retroactive

A defendant sentenced to death for a crime of arson committed prior to 8 April 1974, the effective date of the statute changing the punishment for arson from death to life imprisonment, is entitled to have his case remanded for imposition of a sentence of life imprisonment pursuant to the 1975 Act which made the change in punishment retroactive. Chapter 703, 1975 Session Laws.

APPEAL by defendant from two judgments of *Winner, J.,* entered at the November 1974 Special Session of WILKES Superior Court.

Defendant was duly indicted in separate bills for arson (No. 74-CR-2112), kidnapping (No. 74-CR-2113), assault with a deadly weapon with intent to kill (No. 74-CR-2114), felonious breaking and entering (No. 74-CR-2178), and larceny from the person (No. 74-CR-2179), all of which charges arose from one

criminal episode against one victim. The indictments, which were returned at the June 24, 1974 Criminal Session of Wilkes Superior Court, were consolidated for trial on motion of the State without objection. Defendant's motion for nonsuit was allowed at the close of the State's evidence as to the charge of assault with a deadly weapon with intent to kill (No. 74-CR-2114). The jury returned a verdict of guilty as charged in all the other cases. In the arson case Judge Winner imposed the then mandatory death sentence. The other cases were consolidated for judgment and defendant was sentenced to life imprisonment.

Evidence for the State, including the testimony of the victim of these crimes, Lester Roark, tended to show that at or about 10:30 p.m. on 6 April 1974, defendant and a companion, Robert Pruitt, forcibly broke into and entered a small cinderblock house in Wilkes County. Their purpose was to rob the owner and sole occupant of the house, an 83-year-old recluse named Lester Roark. Robert Pruitt was under the mistaken belief that Roark kept large sums of money hidden in his dwelling.

When Roark attempted to defend his home by brandishing a hammer, Pruitt overpowered him and then beat him about the head, back, face and arms with the hammer. Defendant and Pruitt then tied up Roark and attempted to force him to reveal where his money was hidden. Defendant and Pruitt took what money Roark had on his person, broke into a vending machine he kept on the premises, and took groceries he had on hand. They then forced Roark into his basement, placed newspapers next to his bound body, ignited the papers, and left. After "the place had started to burn pretty good" defendant returned to the basement, untied Roark's feet and took him outside. Defendant and Pruitt placed Roark in their automobile and drove away while discussing how to kill him and dispose of the body. During the entire episode one of Roark's assailants several times addressed the other as "Whitley."

Ultimately, Roark was released on a deserted road some eight to ten miles from his home. A passing truck driver picked him up and returned him to his house which had burned to the ground.

Defendant and Pruitt left the State but both of them were subsequently arrested and returned to North Carolina. Upon his

return defendant admitted to authorities his part in the crimes. His confession was offered in evidence at his trial.

Defendant offered no evidence.

*Rufus L. Edmisten, Attorney General, and Lester V. Chalmers, Jr., and Sidney S. Eagles, Jr., Assistant Attorneys General, for the State.*

*Max F. Ferree for defendant appellant.*

EXUM, Justice.

Defendant brings forward five assignments of error but concedes in his brief that the first four are "not well taken." The fifth relates to the constitutionality of the death penalty as imposed in this case. Defendant has asked us to carefully scrutinize the entire record, including the instructions to the jury to which no exception was taken "in an effort to find that prejudicial error that counsel was unable to uncover. This we have done. "[I]t is the uniform practice in this Court in every case in which a death sentence has been pronounced to examine and review the record with minute care to the end it may affirmatively appear that all proper safeguards have been vouchsafed the unfortunate accused before his life is taken by the State." *State v. Fowler,* 270 N.C. 468, 469, 155 S.E. 2d 83, 84 (1967). Unanimously we find no error in the conduct of the trial and hold that the verdicts of guilty must stand.

Defendant's first assignment of error challenges the admission into evidence of his confession. A *voir dire* hearing was conducted at trial to determine its admissibility. We have looked, however, not only to evidence presented on *voir dire* but to the entire record in our consideration of this assignment. *State v. Silver,* 286 N.C. 709, 213 S.E. 2d 247 (1975). The State's evidence was, essentially, as follows: Wilkes County Deputy Sheriff Franklin Earp took custody of defendant at 11:00 a.m. on April 15, 1974, at Virginia Beach, Virginia, where defendant had been arrested for being publicly drunk. He had been in jail there for several days and had no odor of alcohol on his breath at the time Earp took him into custody. During the trip to Wilkes County defendant asked several times to be given beer and liquor but none was given him. Defendant arrived in Wilkes County between 4:00 and 5:00 p.m. on April 15. He was interrogated by Captain Melvin Roberts of the Wilkes County Sheriff's Department in the presence of Special Agent Steve

State v. Whitley

Cabe of the State Bureau of Investigation and Deputy Earp. The interrogation began at 5:05 p.m. and ended at 6:30 p.m. At the time of the interrogation defendant was "very nervous, he was more or less wringing his hands, he couldn't be still, he would attempt to light a cigarette." Defendant "did from time to time call for liquor. No liquor was given to him in order to booster him" and "no liquor was given to him after the interrogation." Defendant told Captain Roberts that "he was very nervous and shook up, he told me he had been on a drunk for a few days, he was getting off of it, pretty upset, I asked him how he had been sleeping, he told me he had been sleeping pretty good, he was feeling a lot better than he did." Before being questioned, defendant was advised of his right to remain silent and to have a lawyer present before and during questioning. He was told that if he could not afford to employ a lawyer one would be appointed by the court before any questions were asked and that if he decided to answer questions without a lawyer he could stop answering them at any time. When asked, defendant replied that he understood these rights. Defendant signed a written waiver of rights form. The written waiver, although offered in evidence at trial as State's Exhibit No. 1, was not brought forward on appeal. No promises, threats, or inducements of any kind were offered defendant. Defendant "was coherent" and his answers responsive.

Although defendant himself did not testify either on *voir dire* or before the jury he offered, on *voir dire,* the testimony of his physician, sister, mother, and two fellow inmates at the Wilkes County Jail. Their testimony was essentially to the effect that defendant was an alcoholic and when observed by some of the witnesses on April 16 he appeared to be nervous, shaky, as if he had "been on a drunk."

[1]   Judge Winner, after the *voir dire* hearing, made this ruling:

"The Court finds as a fact that on the occasion that the statement was taken that the Defendant was informed of all of the rights required by the case of MIRANDA v. ARIZONA, that he was not intoxicated at that time, and that he understood the rights given to him and that he affirmatively in writing waived the rights under the Miranda decision before he made his statement. The Court concludes from his findings of fact that statement made at that time on April

15, 1974, is admissible in the trial of this case and the objection is overruled."

Although the uncontradicted evidence adduced on *voir dire* and before the jury shows that defendant's confession was freely and voluntarily made after he had been duly advised of his constitutional rights, which he knowingly and understandingly waived, Judge Winner did not find expressly that the confession was voluntary. While the better practice is to make full findings of fact upon which the court's conclusions are based where, as here, there is no conflicting evidence with regard to voluntariness and all the evidence adduced tends to show the confession was voluntary, failure of the court to make an express finding of voluntariness is not error. *State v. Simmons,* 286 N.C. 681, 692, 213 S.E. 2d 280, 288 (1975). Such finding is implied when the court admits the confession into evidence. This assignment of error is overruled.

[2]  Defendant's second assignment of error is that the court below erred in refusing to accept certain guilty pleas tendered by defendant during trial. At the conclusion of the *voir dire* hearing to determine admissibility of his confession defendant, through counsel, tendered pleas of guilty to the felonies of breaking or entering, larceny from the person, and burning of an unoccupied building. These pleas were acceptable to the State and would have resulted in the dismissal of all other charges against defendant. Through similar plea bargaining Robert Pruitt had previously been allowed to plead guilty to a non-capital felony.

As required after tender of the pleas, Judge Winner examined defendant personally to determine whether the pleas were "voluntarily, understandingly and intelligently tendered." *State v. McClure,* 280 N.C. 288, 294, 185 S.E. 2d 693, 697 (1972). The following exchange occurred (questions are by the court) :

"Q. Do you understand that your lawyer has tendered pleas of guilty on your behalf to the offenses of breaking or entering, larceny from the person, and burning an unoccupied building, do you understand that he has tendered those pleas of guilty?

"A. Yes.

"Q. Do you understand that?

"A. Yes, I think so. I don't know nothing about law. I can't read. Nobody never read any law to me.

"BY THE COURT: Did your lawyer come to you and ask you whether you wanted to plead guilty to those offenses, if the State would drop all the other charges?

"A. You can ask him how he said it, he said it and I said: 'All right.'

"Q. Did you say you would plead guilty?

"A. Yes.

"Q. Do you understand you could go on and continue to try this case out and have the jury decide it, do you understand that?

"A. *I believe I will go on and let the jury decide it.*

"BY THE COURT: Is that what you want to do. All right, we will go on and let the jury decide it. The Court will not accept the pleas of guilty tendered by the Defendant in the absence of the jury. You may go down there and sit next to your lawyer." (Emphasis supplied.)

From this colloquy it is clear that acceptance of defendant's guilty pleas would have been improper because defendant himself withdrew them. Further urging or prodding by court or counsel might well have deprived pleas subsequently accepted of their requisite voluntariness and encouraged a later post-conviction proceeding to set them aside. Defendant, moreover, concedes that he "cannot in good conscience argue that the court's action constitutes reversible error." We agree.

[3] Defendant's third and fourth assignments of error raise the question of the sufficiency of the evidence to overcome his motions for judgment of nonsuit in all cases at the conclusion of the evidence. Testimony of the victim himself tended to establish every element of each crime for which defendant had been convicted and identified defendant as one of the perpetrators. This testimony alone provided plenary evidence to overcome defendant's motions for nonsuit. These assignments deserve no further discussion and are overruled.

[4] Defendant's fifth assignment of error challenges the imposition of the death penalty in the arson case. Defendant contends that in this case exacting the supreme penalty violates the Equal Protection Clause of the Fourteenth Amendment and

the Cruel and Unusual Punishment Clause of the Eighth Amendment to the Constitution of the United States, the latter made applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972), and Article I, §§ 19 and 27 of the Constitution of North Carolina—particularly since on April 8, 1974, less than two days after defendant committed the arson, the North Carolina General Assembly ratified Chapter 1201 of the 1973 Session Laws, which, *inter alia,* changed the penalty for this crime from death to life imprisonment effective upon ratification. A majority of this Court rejected this very argument in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975) and *State v. Boyd,* 287 N.C. 131, 214 S.E. 2d 14 (1975). The reason for rejection was expressly stated in *Williams.* It was based on Section 8 of Chapter 1201, 1973 Session Laws which provided "This act shall become effective upon ratification *and applicable to all offenses hereafter committed."* (Emphasis supplied.) The majority in *Williams* reasoned that Chapter 1201 was, consequently, prospective only in application and did not apply to any offenses committed before April 8, 1974.

On June 23, 1975, however, the North Carolina General Assembly ratified House Bill 954, Chapter 703, 1975 Session Laws, Section 1 of which provides that Sections 3 and 4 of Chapter 1201, 1973 Session Laws (making life imprisonment the punishment for first degree burglary and arson), "shall apply to all [such] crimes . . . committed prior to April 8, 1974 . . . as well as to those thereafter committed." House Bill 954 has by implication repealed Section 8 of Chapter 1201, 1973 Session Laws, insofar as this section made Sections 3 and 4 of Chapter 1201 prospective only in application. We construe Section 2 of House Bill 954 setting out the procedure for effectuating Section 1 to apply only to capital cases which have been finally determined by this Court such as, for example, *State v. Boyd, supra.* Since defendant's case had not been finally determined upon ratification of House Bill 954, he is entitled now to the benefits of Section 1. The arson case must therefore be remanded for the imposition of a sentence of life imprisonment.

In defendant's trial and various convictions we unanimously find no error. For the reasons stated, the arson case (74-CR-2112) is remanded to the Superior Court of Wilkes

County which is instructed to impose a sentence of life imprisonment.

No error in the trial.

Case No. 74-CR-2112 remanded for the imposition of a sentence of life imprisonment.