STATE OF NORTH CAROLINA v. ANTHONY PAYNE SILER

No. 49

(Filed 10 May 1977)

1. **Criminal Law § 75.10— waiver of right to counsel — affirmative showing required**

    When the State seeks to offer in evidence a defendant's in-custody statements, made in response to police interrogation and in the absence of counsel, the State must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to counsel.

2. **Criminal Law § 76.5— confession — voir dire — necessity for findings**

    When no material conflict in the evidence on *voir dire* exists, it is not error to admit a confession without making specific findings of fact, although the better practice is always to find all facts upon which the admissibility of the evidence depends. In such case, the necessary findings are implied from the admission of the confession into evidence.

3. **Criminal Law § 75.11— failure to request counsel — no waiver of right**

    A defendant's failure to request an attorney is not an effective waiver of the right to counsel.

4. **Criminal Law § 75.11— confession — right to counsel — waiver by silence**

    Although failure to request an attorney after the *Miranda* warnings have been given does not ordinarily constitute a waiver, a waiver by silence can be inferred where subsequent comments of the defendant indicate that he intended his silence as a waiver of his right to an attorney during interrogation.

5. **Criminal Law § 75.4— confession — failure to show counsel waived — admission improper**

    The trial court erred in admitting an incriminating statement made by defendant where uncontradicted evidence was insufficient to show a waiver of the right to counsel and where there was conflicting evidence, which the trial court did not resolve, as to whether defendant asked for an attorney immediately after being informed of his rights.

6. **Criminal Law § 75.9— volunteered statements — admissibility**

    The trial court properly allowed into evidence incriminating statements made spontaneously by defendant immediately following an officer's reading to defendant of an arrest warrant for rape, and the fact that defendant had requested an attorney but no attorney had been appointed did not render the volunteered statements inadmissible.

7. **Criminal Law § 76— involuntary confession — subsequent confession — presumption of involuntariness**

    Where a confession has been obtained under circumstances rendering it involuntary, a presumption arises which imputes the same prior

State v. Siler

influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence, the burden being upon the State to overcome this presumption by clear and convincing evidence.

**8. Criminal Law § 76— involuntary confession — admissibility of subsequent confession**

Defendant's second confession was properly admitted into evidence notwithstanding the inadmissibility of his first confession, since no threats or promises were used to extract the first confession.

**9. Criminal Law § 75.12— inadmissible first statement — subsequent similar statement — admission of first statement harmless**

Because defendant's inadmissible first statement was in all material respects identical to his admissible second statement, error in admitting the first statement was harmless beyond a reasonable doubt.

**10. Criminal Law § 75.12— statements made during custodial interrogation — admissibility — waiver of right to counsel required**

An effective waiver of the right to counsel is a prerequisite to the admissibility of *any* statement made by a defendant during custodial interrogation.

**11. Criminal Law §§ 75.12, 96— improper custodial interrogation — evidence erroneously admitted — no prejudice**

Though it was error to allow an officer to testify that during an improper custodial interrogation defendant told him that he "had been in trouble ever since he was 15 or 16 years old" and that he "started off stealing hubcaps in Philadelphia," defendant was not prejudiced, since the court immediately instructed the jury that the evidence was incompetent and they should not consider it.

**12. Criminal Law § 21.1— probable cause hearing — continuances — no denial of statutory right**

Defendant failed to show that his statutory rights pursuant to G.S. 15A-606 were violated where he did not show that the trial court failed to make necessary findings before granting continuances of his probable cause hearing, nor did defendant show that his case was prejudiced in any way by either the delay in holding the probable cause hearing or the lack of "timely" notice of continuances.

**13. Robbery § 4; Rape § 5— armed robbery — first degree rape — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for first degree rape and armed robbery where it tended to show that on the morning of the crimes the victim noticed a white Plymouth Fury automobile parked outside behind the hospital where she worked; other hospital employees observed the same car parked in the same spot as they came to work; the victim placed her pocketbook containing $10 on her desk when she arrived at work; a strange black man appeared shortly thereafter in the kitchen and grabbed the victim; he showed her a gun and told her he'd kill her if she did not keep quiet; the man forced her to a dark supply room and there had inter-

State v. Siler

course with her after striking her and breaking her jawbone in two places; while he still held the gun, the victim told him her purse was on the desk; he tied her up with pantyhose; two other employees observed a strange man standing behind a column at the back of the kitchen next to the supply room door; the victim's wallet was discovered lying on the floor where the man had been seen, but no money was in it; the white Plymouth was found in a ditch later the same morning three to four miles from the hospital with a gun holster on the front seat; defendant had possession of the car and the holster that morning; defendant fled from the police; and defendant admitted robbing and tying up a lady at the hospital to police officers.

Justice HUSKINS took no part in the consideration or decision of this case.

DEFENDANT appeals pursuant to G.S. 7A-27(a) from judgment of *Lee, J.*, entered 26 August 1976, CHATHAM County Superior Court. Defendant's conviction of armed robbery was certified for initial appellate review by the Supreme Court pursuant to G.S. 7A-31(a) on 27 January 1977.

On indictments, proper in form, defendant was charged with armed robbery and first degree rape. The jury returned verdicts of guilty as to both charges. The court imposed a sentence of thirty years imprisonment for the armed robbery conviction and a life sentence for the rape conviction to commence at the expiration of the armed robbery sentence.

The State's evidence tended to show that on 14 September 1975, Erline McMasters, a widow aged sixty-two, was employed as diet supervisor at Chatham Hospital in Siler City. Shortly after 5:30 a.m. on 14 September 1975, Mrs. McMasters walked to work as was her custom. She entered the hospital by the emergency entrance and went downstairs to the basement where she unlocked the doors to the kitchen. She placed her pocketbook on her desk and unlocked the back entrance door for the other employees to come in. At that time she observed a white Plymouth Fury automobile parked at the back of the hospital.

Inside the kitchen, as she started to turn on the electric stove, she noticed a black man weighing about 200 pounds standing a few feet away. He was wearing a toboggan and a sweater. At trial, Mrs. McMasters could not positively identify the defendant as the man she saw. She greeted the man with "Good morning. Did you come to work?" because the hospital manager sometimes hired men to work. The man did not answer but asked something about a patient. Before she could

direct him to the patient floor, he approached her and grabbed her around the waist with his left arm. He showed her a gun in his right hand and asked "Do you know what this is?"

The man pulled her to a dark supply room at the back of the kitchen and closed the door. The victim weighed around 110 pounds. She did not resist because of the gun. In the back room he hit her hard several times in the stomach. He indicated that he was going to attack her sexually and called her a "white bitch." He ordered her to take off her clothes. When she did not, he pulled off her shoes, pantyhose and panties. While she was on the floor, he struck her two hard blows to the face. Several times the man told her to "Be quiet or I'll kill you." He then raped her. When he got up he said "you are no good." He turned her over on her stomach and tied her hands and one foot behind her back with her pantyhose.

Mrs. McMasters could not remember what, if anything, the man said about money but she did recall telling him, while he still had the gun, that her money was on the desk.

Other employees arrived soon after and found a strange man in the kitchen standing behind a column at the back near the milkbox. The employees could not identify the man because the back of the kitchen was unlighted. They went upstairs to call the police but when they returned the man was gone. Mrs. McMasters was found and untied. Her jawbone was broken in two places and about $10.00 was missing from her pocketbook. Mrs. McMasters' pocketbook had been removed from the desk at the front of the kitchen to the milkbox. Her billfold was discovered on the floor behind the column next to the milkbox.

Other witnesses had also observed a white Plymouth car with a dent in the rear parked in back of the hospital early that morning. This car was found later the same morning in a ditch three to four miles from the hospital with a gun holster on the front seat. The police began looking for the defendant after learning that he had possession of the car, the holster, and a pistol and a shotgun on the morning of 14 September 1975. Defendant was apprehended at a mobile home of a friend at 11 a.m. on 14 September 1975. Prior to his arrest, he had told the friend that he was in trouble for beating up a *guy* "real bad." After his arrest, defendant confessed twice to the police that he robbed and tied up a lady at the hospital but insisted that he did not rape or beat her. (A pistol belonging to the de-

---

---

fendant found by the police at the mobile home at the time of the arrest was ordered suppressed by the trial court.)

The defendant offered no evidence.

Other facts necessary to the decision will be related in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General David S. Crump for the State.*

*Robert L. Gunn and Paul S. Messick, Jr. for defendant appellant.*

COPELAND, Justice.

Defendant assigns as error the court's failure to suppress two inculpatory statements made by him during in-custody interrogation in the absence of counsel and the subsequent admission of these statements into evidence over objection. Defendant claims there was no effective waiver of his constitutional right to counsel prior to interrogation.

Upon defendant's motions to suppress, two pre-trial hearings were held to consider the admissibility of these confessions. Judge Edwin S. Preston, Jr. presided at both the 17 February 1976 and the 18 May 1976 hearings.

The State's evidence at both suppression hearings indicated that the defendant was not interrogated until after he was taken to the Siler City Police Station and advised of his constitutional rights on 14 September 1975. The defendant read but refused to sign the written waiver of rights form. He informed the investigating officer, Sergeant Randall Stevens, that he (defendant) knew his rights better than the officer did.

Under questioning, the defendant admitted going to the hospital and robbing a woman and tying her up with pantyhose because "he needed money to get back to Philly on. . . . " When asked about beating and raping the woman, defendant allegedly said, "I told you I robbed her and tied her up with her pantyhose, but I did not rape or beat her. If you are going to try to put something on me I didn't do, I want a lawyer." At that point, the questioning halted and the officers tried unsuccessfully to find an attorney for the defendant. Defendant was charged in a warrant with armed robbery and assault on a female and removed to the Chatham County Jail in Pittsboro.

The next day after visiting the victim in the hospital, Sergeant Stevens obtained a warrant for the defendant charging him with first degree rape. Two days after the arrest, Sergeant Stevens served the rape warrant on the defendant in the Chatham County Jail. No attorney was present at the time and the defendant was not readvised of his *Miranda* rights. The officer read the rape warrant to the defendant without asking any questions. The defendant responded "I told you I didn't rape her. I robbed her and tied her up. I didn't rape her. What are you trying to do to me?"

[1]   "[W]hen the State seeks to offer in evidence a defendant's in-custody statements, made in response to police interrogation and in the absence of counsel, the State must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to counsel." *State v. Biggs,* 289 N.C. 522, 531, 223 S.E. 2d 371, 377 (1976) ; *accord, State v. White,* 288 N.C. 44, 215 S.E. 2d 557 (1975) ; *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972) ; *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971). "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda v. Arizona,* 384 U.S. 436, 479, 16 L.Ed. 2d 694, 726, 86 S.Ct. 1602, 1630 (1966).

Both of defendant's alleged statements were made while he was in custody and the first statement was undeniably made during police interrogation. Thus, before the first incriminating statement can be admissible at trial, the State must demonstrate (1) that the full *Miranda* warnings were given and (2) that defendant effectively waived both his right to remain silent and his right to counsel after receiving the warnings.

On this appeal defendant contests only the waiver of his right to counsel. Judge Preston found as a fact at the first suppression hearing that the defendant did *not* waive his right to counsel *in writing.* There were *no* findings at either hearing that the defendant *orally* waived his right to counsel.

[2]   As a general rule, the trial judge *should* at the conclusion of the *voir dire* hearing make findings of fact to show the bases of his ruling. *State v. Riddick,* 291 N.C. 399, 230 S.E. 2d 506 (1976). *State v. Biggs, supra.* When there is a material conflict in the evidence on *voir dire,* the court *must* make findings resolv-

State v. Siler

ing the crucial conflicts. *State v. Riddick, supra; State v. Biggs, supra; State v. Smith,* 278 N.C. 36, 178 S.E. 2d 597 (1971), *cert. denied,* 403 U.S. 934, 29 L.Ed. 2d 715, 91 S.Ct. 2266. When no material conflict in the evidence on *voir dire* exists, it is not error to admit a confession without making specific findings of fact, although the better practice is always to find all facts upon which the admissibility of the evidence depends. *State v. Riddick, supra; State v. Biggs, supra; State v. Whitley,* 288 N.C. 106, 215 S.E. 2d 568 (1975) ; *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975) ; *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971). In such a case, the necessary findings are implied from the admission of the confession into evidence. *State v. Riddick, supra; State v. Biggs, supra; State v. Whitley, supra.* But where there is neither evidence nor findings to show that the defendant waived his right to counsel, the admission of an inculpatory statement made during in-custody interrogation is error. *State v. White, supra; State v. Thacker, supra; State v. Turner,* 281 N.C. 118, 187 S.E. 2d 750 (1972).

[3, 5]  The uncontradicted evidence and findings by the court at the first hearing (defendant did not testify at the first hearing) showed that defendant was given the full *Miranda* warnings prior to questioning; that he understood his rights; that no promises or threats were made to induce his statement, and that he did not request an attorney until after he had confessed to the robbery. These facts standing alone are insufficient evidence of a waiver of the right to counsel. We have held repeatedly that a defendant's failure to request an attorney is not an effective waiver. "An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver." *Miranda v. Arizona, supra* at 470, 16 L.Ed. 2d at 721, 86 S.Ct. at 1626; *accord, State v. Thacker, supra; State v. Blackmon, supra.* "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. . . . 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " *Miranda v. Arizona, supra* at 475, 16 L.Ed. 2d at 724, 86 S.Ct. at 1628; *accord, State v. White, supra; State v. Blackmon, supra.*

State v. Siler

Sergeant Stevens testified at the first suppression hearing that prior to questioning, defendant was asked if he was willing to answer a few questions. Defendant reportedly answered, "Ask them, then I'll tell you whether I'll answer them or not." While we may interpret this statement by defendant as an implied waiver of the right to remain silent, we do not construe it additionally as an implied waiver of the right to counsel.

**[4, 5]** The State's evidence at both hearings indicates that the defendant, upon being questioned about the rape, stated "If you are going to try to put something on me I didn't do, I want a lawyer." According to Sergeant Stevens, the defendant had not mentioned an attorney previously and had talked freely about the robbery. Although failure to request an attorney after the *Miranda* warnings have been given does not ordinarily constitute a waiver, we believe a waiver by silence can be inferred where subsequent comments of the defendant indicate that he *intended* his silence as a waiver of his right to an attorney during interrogation. However, on this appeal, we find that this interpretation of the facts is not open to us. In determining the admissibility of a confession, we are required to look to the *entire* record. *Davis v. North Carolina,* 384 U.S. 737, 16 L.Ed. 2d 895, 86 S.Ct. 1761 (1966) ; *Blackburn v. Alabama,* 361 U.S. 199, 4 L.Ed. 2d 242, 80 S.Ct. 274 (1960) ; *State v. Silver,* 286 N.C. 709, 213 S.E. 2d 247 (1975) ; *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753 (1970). The State's version of defendant's request for counsel does not stand uncontradicted at both hearings. In the instant case the defendant testified at the second suppression hearing that he asked for an attorney *immediately* after being informed of his rights and that Sergeant Stevens nevertheless continued to interrogate him. Judge Preston did not make findings resolving this material conflict in the evidence, as he was required to do under *State v. Biggs, supra.* Under these circumstances, we are constrained to find that the admission of the first incriminating statement was erroneous.

**[6]** At the time the second inculpatory statement was made, two days after his arrest, defendant had requested an attorney but no attorney had been appointed. This fact, however, does not necessarily render the statement inadmissible. The United States Supreme Court has indicated that its decision in *Miranda* set forth rules of police procedure applicable to "custodial interrogation" which it defined as *"questioning initiated by law*

*enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis supplied.) *Miranda v. Arizona, supra* at 444, 16 L.Ed. 2d at 706, 86 S.Ct. at 1612; *accord, Oregon v. Mathiason, _ _ U.S. _;* 50 L.Ed. 2d 714, 97 S.Ct. 711 (1977); *c.f. Brewer v. Williams, ____ U.S. ____, ____ L.Ed. 2d ____,* 97 S.Ct. 1232 (1977). "Volunteered statements of any kind are not barred by the Fifth Amendment. . . . " *Miranda v. Arizona, supra* at 478, 16 L.Ed. 2d at 726, 86 S.Ct. *supra* at 1630.

In the present case, the findings of the trial court and the evidence support the conclusion that defendant's alleged second confession on 16 September 1975 was not the product of "custodial interrogation" but rather was a spontaneous response to the reading of the second warrant. The court found as a fact that "the State of North Carolina served a warrant upon this defendant charging him with rape, and at that time he made a statement to the police officers; that the statement was made by defendant immediately after the reading of the arrest warrant by the officers and without any attempt by said officers to question the defendant further. . . . " Defendant's testimony at the second hearing established that, "They [the officers] did not ask me any questions that day." Standing alone then, the second confession is clearly admissible.

[7] We next consider the effect of the first confession on the admissibility of the second confession. It is well settled in this jurisdiction that " 'where a confession has been obtained under circumstances rendering it involuntary, a presumption arises which imputes the same prior influence to any subsequent confession, and this presumption must be overcome before the subsequent confession can be received in evidence.' (Citation omitted.) The burden is upon the State to overcome this presumption by clear and convincing evidence. (Citations omitted.)" *State v. Silver, supra* at 718, 213 S.E. 2d at 253 (1975). As this rule is broadly stated, it would seem to apply to the instant case.

[8] This rule which predates the *Miranda* decision arises out of a concern that where the first confession is procured through promises or threats rendering it involuntary as a matter of law, these influences may continue to operate on the free will of the defendant in subsequent confessions. *See, e.g., State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968); *State v. Hamer,* 240 N.C. 85, 81 S.E. 2d 193 (1954); *State v. Gibson,* 216 N.C. 535, 5 S.E.

2d 717 (1939); *State v. Moore,* 210 N.C. 686, 188 S.E. 421 (1936). In the case at bar, Judge Preston found, and these findings are supported by uncontradicted evidence, that no promises or threats were made to the defendant "in connection with his interrogation or thereafter." Thus, where no threats or promises were used to extract the first confession, as in this case, the reason for the rule giving rise to the presumption does not exist. In addition, we question whether this presumption was ever intended to apply to subsequent statements by a defendant that are spontaneous utterances as opposed to subsequent confessions that are the product of interrogation. We hold that defendant's second confession was properly admitted into evidence, notwithstanding the inadmissibility of his first confession.

[9] It remains to be determined whether the erroneous admission of the first inculpatory statement constitutes prejudicial error so as to require a new trial. Ordinarily, where a confession made by the defendant is erroneously admitted into evidence, we cannot say beyond a reasonable doubt that the erroneous admission of the confession did not materially affect the result of the trial to the prejudice of the defendant. *State v. Blackmon, supra.* But because in this case defendant's inadmissible first statement was in all material respects identical to his admissible second statement, we conclude the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967).

[11] At trial, Sergeant Stevens testified that, in addition to the first inculpatory confession considered in the previous assignment of error, defendant told him on 14 September 1975 that he (defendant) "didn't belong in society," that he "had been in trouble ever since he was 15 or 16 years old" and that he "started off stealing hubcaps in Philadelphia." Upon the introduction of this testimony at trial, defense counsel made a motion to strike, which was allowed, and a motion for a mistrial, which was denied. The court immediately instructed the jury that this evidence was incompetent and not to consider it. Defendant assigns as error the court's denial of his motion for a mistrial. Defendant claims these statements were inadmissible because (1) they were obtained from the defendant during custodial interrogation without the accused having effectively waived his right to counsel and (2) because the State did not disclose its intention to use these statements at trial when it

State v. Siler

responded to defendant's request for discovery under G.S. 15A-902 and in contravention of the continuing duty to disclose provided in G.S. 15A-907. Because of the prejudicial nature of these statements, defendant argues the only appropriate remedy was a mistrial. *See* G.S. 15A-910(a)(4).

[10] We agree with defendant's position that these statements were inadmissible because they were elicited during the custodial interrogation on 14 September 1975 discussed previously. An effective waiver of the right to counsel is a prerequisite to the admissibility of *any* statement made by a defendant during custodial interrogation. *Miranda v. Arizona, supra.* Thus, even if the State had complied with the discovery rules and revealed its intent to use the statements, the statements would nevertheless have been objectionable.

Ordinarily, where objectionable evidence is withdrawn and the jury instructed not to consider it no error is committed because under our system of trial by jury we assume that jurors are people of character and sufficient intelligence to fully understand and comply with the court's instructions and they are presumed to have done so. *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38 (1974) ; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966) ; 4 Strong's N. C. Index, Criminal Law § 96 (1976). In some instances where the incompetent evidence is of such a serious nature that its prejudicial effect cannot be cured by an instruction, we have held that a mistrial should have been granted. *See, e.g., State v. Aycoth,* 270 N.C. 270, 154 S.E. 2d 59 (1967).

[11] We find the objectionable evidence in this case curable by instruction. The jurors were merely informed that the defendant had been in some unspecified "trouble" since an early age, with the gravest and only crime mentioned being larceny of some hubcaps. It should not have been difficult for the jurors to have ignored this information upon proper instruction. The assignment of error is overruled.

[12] In his next assignment of error, defendant maintains the trial court erred in denying his pretrial motion to dismiss the charges against him. Defendant filed the motion to dismiss and a supporting affidavit on 17 February 1976, claiming that his constitutional rights were violated because the probable cause hearing was not held within the time limits prescribed by G.S. 15A-606. Defendant apparently contends that the procedures

State v. Siler

outlined in G.S. 15A-606 are mandated by the due process clauses of the State and Federal Constitutions and that unless the statute is strictly complied with, due process requires that the charges against a defendant be dropped. The statute itself does not explain its purpose or specify any sanctions for the failure to comply with its provisions.

We note first that defendant's probable cause hearing was held approximately one month after his arrest and that he does not claim his constitutional right to a speedy trial was abridged in any way. Assuming, without deciding, that due process requires a probable cause hearing to be held within a reasonable time after arrest, defendant's constitutional rights have not been infringed. We cannot conceive that due process requires that a probable cause hearing be held within a *specific* number of days following arrest. The questions for resolution then become were defendant's statutory rights violated and, if so, is dismissal of the charges against him the proper remedy?

G.S. 15A-606 provides in pertinent part as follows:

"(d) If the defendant does not waive a probable-cause hearing, the district court judge must schedule a hearing not later than 15 working days following the initial appearance before the district court judge; if no session of the district court is scheduled in the county within 15 working days, the hearing must be scheduled for the first day of the next session. The hearing may not be scheduled sooner than five working days following such initial appearance without the consent of the defendant and the solicitor.

\*     \*     \*

"(f) Upon a showing of good cause, a scheduled probable-cause hearing may be continued by the district court upon timely motion of the defendant or the State. Except for extraordinary cause, a motion is not timely unless made at least 48 hours prior to the time set for the probable-cause hearing."

Defendant's initial appearance before the district court took place on 17 September 1975. His probable cause hearing was first scheduled for 3 October 1975, twelve working days after his initial appearance and within the time prescribed by statute. On 2 October 1975, on motion of the State, the hearing was continued until 10 October 1975. On 9 October 1975 the hearing was again continued at the request of the State until 17 October 1975.

State v. Siler

Under the statute, a timely motion for a continuance is properly granted if "good cause" is shown and a motion for a continuance made less than 48 hours before the scheduled hearing is considered timely if "extraordinary cause" is shown. The determinations of good cause and extraordinary cause are for the trial court.

Defendant has not shown that the trial court failed to make these findings or that its findings were not supported by evidence. Nor has defendant shown that his case was prejudiced in any way by either the delay in holding the probable cause hearing or the lack of "timely" notice of the continuances. Finally, we question whether the specific provisions that defendant alleges were violated were designed to provide him with additional rights, rather than as rules for the orderly and efficient administration of justice. For example, it appears from the Official Commentary to G.S. 15A-606 that the forty-eight hour notice requirement for a motion for a continuance was imposed solely to prevent inconvenience to the witnesses who will testify at the probable cause hearing and not for the protection of defendants.

In sum, on the facts of this case, we cannot say that defendant's statutory rights were violated, assuming that G.S. 15A-606 was designed to provide him additional rights. Our holding renders it unnecessary to decide whether the remedy defendant requested, dismissal of the charges, is the appropriate sanction for a failure to comply strictly with G.S. 15A-606. The assignment of error is overruled.

Defendant claims the court committed error in denying his motions to dismiss the case made at the close of the State's evidence and at the close of all the evidence. Considering the evidence, as we must, in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn therefrom, we conclude there was sufficient evidence of the commission of an armed robbery and a first degree rape and of defendant's role as perpetrator to withstand a motion for nonsuit. *State v. Cousin,* 291 N.C. 413, 230 S.E. 2d 518 (1976) ; *State v. Harding,* 291 N.C. 223, 230 S.E. 2d 397 (1976).

[13] The evidence when considered in the light most favorable to the State shows the following: (1) Very early on the morning of 14 September 1975, Mrs. McMasters noticed a white Plym-

outh Fury automobile parked outside behind the hospital; (2) other hospital employees observed the same car parked in the same spot as they came to work; (3) Mrs. McMasters placed her pocketbook containing approximately $10.00 on her desk when she arrived at work; (4) a strange black man appeared shortly thereafter in the kitchen and grabbed Mrs. McMasters; (5) he showed her a gun and told her if she did not be quiet that he would "kill her"; (6) the man forced her to a dark supply room at the back of the kitchen and removed her shoes, pantyhose, and underpants; (7)ª he struck her several hard blows, breaking her jawbone in two places; (8) he penetrated her private parts with his private parts; (9) while he still held the gun, the victim told him her pocketbook was on the desk; (10) he tied her up with her pantyhose; (11) two other employees observed a strange man standing behind a column at the back of the kitchen next to the milkbox and the supply room door; (12) Mrs. McMasters' pocketbook was found on the milkbox thirty feet from her desk; (13) her billfold was discovered lying on the floor behind the column next to the milkbox; (14) no money was in the billfold; (15) the white Plymouth was found in a ditch later the same morning three to four miles from the hospital with a gun holster on the front seat; (16) defendant had possession of the automobile and the holster that morning; (17) defendant fled from the police; (18) defendant admitted robbing and tying up a lady at the hospital to police officers. These facts and the reasonable inferences arising thereon are sufficient to withstand a motion for nonsuit on the charges of first degree rape and armed robbery. The assignment of error is overruled.

Defendant's brief has other assignments of error as follows: Nos. 4, 7, 10, 13, 14, 16, 17, 20, 28, 29, 30, 32, 33, 34, 40. We have examined all of these and find them to be without merit. In addition, due to the serious nature of the crimes for which defendant has been convicted, we have searched the record for errors other than those assigned by the defendant and have found none.

It has been difficult for us to ascertain the facts from the briefs submitted by the defendant and the State. Neither brief gives a statement of the essential facts except as discussed in the assignments of error. We note that Rule 28(b)(2) of the Rules of Appellate Procedure, among other things, requires the appellant's brief to "additionally contain a short, non-argumen-

tative summary of the facts underlying the matter in controversy where this will be helpful to an understanding of the questions presented for review." The State is not required by Rule 28(c) to state the facts unless there is some disagreement. A summary of essential facts would have been most helpful in this case. We note also that it is the better practice for the appellee's brief to use the same numbering system for the questions presented as the appellant's brief. The State's failure to do so further complicated our review of this case.

In the trial we find

No error.

Justice HUSKINS took no part in the consideration or decision of this case.