STATE OF NORTH CAROLINA v. EDWARD LEE CRAWFORD

No. 25

(Filed 7 October 1980)

**Criminal Law § 75.7– defendant's statements to officer – absence of Miranda warnings – harmless error**

Assuming, without deciding, that defendant's statements to an officer that "I'll kill him if he lives" and "I'll kill the m—— f——" which were made after the officer asked him "Why?" were erroneously admitted into evidence because defendant had not been given the *Miranda* warnings before the officer's question, the admission of such statements was harmless beyond a reasonable doubt where statements by defendant which were identical in all material respects were admitted from three other sources without objection.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Howell, J.*, 13 December 1979 Criminal Session of MECKLENBURG County Superior Court.

Defendant was charged in an indictment proper in form with the murder of Alfred Woodrow Smith. Defendant entered a plea of not guilty.

At trial the State presented evidence tending to show that on the morning of 8 August 1979 defendant was talking with Thomas Jackson. Jackson said that defendant told him that before the day was out he would kill somebody. Defendant also told Jackson that somebody had testified in court against his son. Jackson said that defendant showed him a sawed-off shotgun he was carrying in a paper bag.

Shortly after this conversation, Jackson and another witness saw Alfred Woodrow Smith approach defendant. Each witness testified that Smith held his hand out to defendant and asked, "How are you doing?" Neither witness saw Smith holding a gun or going for his pocket. Jackson testified that defendant answered Smith, "I'll show you how I'm doing," pulled the shotgun from the bag, and shot Smith. After the shooting, the witnesses said defendant went down the street with the shotgun. Another witness said that after the shooting defendant

asked him to hide the shotgun in his house, but he refused. Police later found the gun in a local poolroom.

Officer Judy Ward was the first police officer on the scene. She testified that a crowd had formed around Smith who lay sprawled, but still alive, in the street. She asked the crowd who shot the victim, and she testified that defendant stepped from the crowd and said, "I shot the s-- of a b----." Officer Ward and other witnesses testified that defendant then went over to the victim and kicked him in the head. Jackson testified that he heard defendant say, "I thought you were dead."

Officer Ward testified that after defendant kicked the victim in the head she pushed him toward her patrol car. Defendant objected to the admission of any other statements made by defendant to Officer Ward, contending that the admission of the statements would violate defendant's Miranda rights because he was in the custody of Officer Ward, was questioned and had not been read his rights. During the voir dire hearing, Officer Ward testified that, as she directed defendant to the patrol car and before reading him his rights, she asked him "Why?" She said he answered, "It's none of your damn business." She said that she asked no further questions, but that defendant continued to make statements, including, "I'll kill him if he lives. I'll kill the m----- f-----." The trial judge, after making findings of fact, concluded that, although in his opinion the confrontation was not governed by *Miranda*, he would suppress defendant's immediate response to Officer Ward's question, but he would not suppress defendant's additional statements.

William Massey, who lives in the vicinity of the shooting, testified that he joined the crowd around the victim. He testified, without objection by defendant, that he heard defendant say that if the victim did not die, he would kill him when he got out.

Gentry Caudill, an Assistant District Attorney for Mecklenburg County, testified that the victim had been a witness in a case against defendant's son. The State offered medical evidence tending to show that Smith died as a result of a gunshot wound to the abdomen.

Defendant took the stand in his own defense. Defendant testified that when he met Smith that day he asked him why he had two boys rob defendant's home. Defendant said that Smith then reached into his pockets twice, and the second time pulled out a gun. Defendant testified he then shot Smith in self-defense. Defendant denied kicking the victim in the head, but said, "I had on some soft-bottomed shoes. My foot slid beside his head." He denied seeing the State's witness Jackson on the day of the shooting or knowing that the victim had testified against his son. He also denied stating to Officer R.B. Crenshaw that he had intended to kill Smith and would go to the hospital to finish the job.

On rebuttal the State presented Officer Crenshaw and another officer who testified that defendant, after being advised of his Miranda rights, told them he hoped Smith would die and that if the victim did not he would go to the hospital to finish the job.

The trial judge submitted the possible verdicts of guilty of first-degree murder, guilty of second-degree murder, guilty of manslaughter, or not guilty. The jury returned a verdict finding defendant guilty of first-degree murder. After a hearing on the recommendation for punishment, the jury recommended a life sentence. The trial judge entered judgment imposing a sentence of life imprisonment. Defendant appealed.

*Rufus L. Edmisten, Attorney General, by Grayson G. Kelley, Associate Attorney, for the State.*

*Lyle J. Yurko, Assistant Public Defender, 26th Judicial District, for defendant.*

BRANCH, Chief Justice.

Defendant's only assignment of error was the trial court's admission of defendant's statements to Officer Ward after her question, "Why?" Defendant answered the question, "None of your damn business," and then defendant went on, and Officer Ward was allowed to testify in court, "[Defendant] said, 'I'll kill him if he lives' and 'I'll kill the m----- f-----.' "

Statements of a defendant made while he is being interrogated and while he is held in custody should be excluded from evidence if the defendant is not warned of and does not understandingly waive his rights to remain silent and have an attorney present at questioning. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602. However, admission of such statements into evidence is not fatal and will not require reversal when the admission of the statements is harmless beyond a reasonable doubt. *State v. Siler,* 292 N.C. 543, 234 S.E. 2d 733 (1977), *citing, Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967). In *Siler* this Court stated, "[B]ecause in this case defendant's inadmissible first statement was in all material respects identical to his admissible second statement, we conclude the error was harmless beyond a reasonable doubt." *State v. Siler, supra* at 552, 234 S.E. 2d at 739.

Assuming, without deciding, that defendant's statements to Officer Ward rise to the protection of *Miranda,* we consider whether the statements were harmless beyond a reasonable doubt. Statements identical in all material respects were admitted without objection from three other sources. A bystander testified to the same matter that defendant seeks to have suppressed. Further, police officers Crenshaw and Overturf testified, on rebuttal, to almost identical statements made by defendant. Thus we hold that, even if the statements to Officer Ward were erroneously introduced into evidence, their effect was harmless beyond a reasonable doubt.

No Error.

Justice BROCK did not participate in the consideration or decision of this case.